STATE of Minnesota, Respondent,

v.

**Kofi YEBOAH, Appellant.**

No. A04–1031.

Court of Appeals of Minnesota.

Jan. 25, 2005.

Mike Hatch, Attorney General, St. Paul, MN; and Amy Klobuchar, Hennepin County Attorney, Linda K. Jenny, Assistant Hennepin County Attorney, Minneapolis, MN, for respondent.

Larry E. Reed, Minneapolis, MN, for appellant.

Considered and decided by SHUMAKER, Presiding Judge; RANDALL, Judge; and HALBROOKS, Judge.

## OPINION

GORDON W. SHUMAKER, Judge.

On appeal from a declaration of a mistrial and a motion for retrial, appellant argues that (1) retrial is barred by the double-jeopardy clauses of the United States and Minnesota constitutions because the mistrial was declared over the defendant's objection; (2) no manifest necessity existed for the declaration of the mistrial; and (3) the district court erred when it sent the incomplete jury in to determine whether or not they could reach a verdict. We affirm.

## FACTS

After considering various problems with the jury in appellant Kofi Yeboah's criminal trial, the district court granted the prosecutor's motion for a mistrial. Yeboah challenges that decision, contending that the court abused its discretion because there was no manifest necessity for a mistrial and that the principle of double jeopardy bars a retrial.

Yeboah's trial on charges of criminal sexual conduct and kidnapping lasted six days. The jury began deliberating in the afternoon on March 30, 2004, and continued into that evening. It deliberated the entire next day, and at 9:45 p.m., the court, with the consent of Yeboah, his attorney, and the prosecutor, excused one juror from further service so that she could go on a scheduled vacation, which she disclosed during voir dire.

The remaining 11 jurors reported the next morning to resume their deliberations. Before they began, one juror became ill. The court determined that she was "incapacitated," sent her home, and contacted counsel to determine how best to proceed.

With Yeboah and both attorneys present, the court explained why it sent the ill juror home and stated that it had received notes from two other jurors regarding schedule problems. The first merely asked to be allowed to make a telephone call to cancel a haircut appointment. The other was concerned about dealing with a job interview scheduled for the next day. The court also mentioned that a third juror "in voir dire indicated that she is leaving for vacation tomorrow."

The court then had the remaining ten jurors brought back to the courtroom and told them that they were being excused for the day but that they should return the next day. The court told the juror who was scheduled to leave for a vacation the next day that it would authorize payment for a replacement airplane ticket. The juror then explained that she had purchased a vacation package that included travel with her 18–year–old daughter and that the total price was $3,400. She stated that they were scheduled to leave at 7:00 the next morning.

Another juror volunteered that the jurors were "very strong on both sides" and

disclosed that "we haven't made much progress." This information prompted the court to instruct the remaining ten jurors to return to the jury room, where the foreperson was to poll the jurors and report "only whether the majority of the people feel they can reach a verdict or they can't reach a verdict." After the jurors left the courtroom, defense counsel stated that any polling would be invalid because one juror was missing.

When the jurors returned to the courtroom, the foreperson reported that "we won't be able to reach a unanimous decision." The court inquired whether the presence of the ill juror might alter that conclusion and the foreperson replied, "No."

The prosecutor then moved for a mistrial. Defense counsel opposed the motion, arguing that the jury had not deliberated for very long and that the jury poll was invalid without the ill juror. The prosecutor cited the vacation of one juror scheduled for the next day, reminded the court that yet another juror had previously disclosed an impending vacation, and said she would not agree to a jury of fewer than ten members.

The court pointed out that it and counsel had told the prospective jurors during voir dire on March 15 that the trial would take five days and that it was now April 1. The court recalled that "we did have notice from several jurors that they had to leave on vacation." The court then announced that it would have to grant the motion for a mistrial.

When defense counsel responded that he and the prosecutor had agreed to accept a jury of ten members, the prosecutor stated that she would not agree to a jury of only ten jurors.

Noting its concern about the "cumulative effect" of various jurors' schedule problems, the apparent deadlock, and the prosecutor's refusal to agree to a jury of ten people, the court declared a mistrial and discharged the jury. When the state later moved for a retrial, Yeboah opposed the motion on the ground that the principle of double jeopardy barred a retrial. The court granted the state's motion, and Yeboah appealed.

## ISSUE

In appellant's criminal trial, jurors deliberated for 1½ days. The court excused one juror to go on a scheduled vacation. Another juror became ill, and the court suspended deliberations for a day. The suspension threatened to interfere with other jurors' vacation commitments. The remaining jurors appeared to be deadlocked. The attorneys disagreed as to the minimum number of jurors allowable to continue with deliberations. Did the district court abuse its discretion in granting the state's motion for a mistrial on the ground of manifest necessity?

## ANALYSIS

Both the federal and Minnesota constitutions guarantee that a criminal defendant may not be tried more than once for the same crime. U.S. Const. amend. V ("No person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb"); Minn. Const. art 1, § 7 ("No person shall be . . . put twice in jeopardy of punishment for the same offense.").

When a criminal trial is terminated over the defendant's objection before a verdict is reached, the double-jeopardy clauses of the federal and state constitutions bar a retrial unless the previous trial was terminated for a manifest necessity. *State v. Fuller*, 374 N.W.2d 722, 726 (Minn. 1985).

■ Jeoparedy attaches as soon as the jury is sworn. *Id.* Because Yeboah's jury had not only been sworn but had actually deliberated for about a day and a half, jeopardy had attached, and Yeboah cannot be retried unless there was a manifest necessity for the mistrial.

■ We review a trial court's declaration of a mistrial under an abuse-of-discretion standard. *State v. Long,* 562 N.W.2d 292, 296 (Minn.1997). The termination of a trial is discretionary with the court, but that discretion must be exercised with caution and only so as to serve the ends of public justice. *State v. McDonald,* 298 Minn. 449, 454, 215 N.W.2d 607, 610 (1974).

■■ Reviewing courts give great deference to a trial court's declaration of a mistrial when a jury is deadlocked. *Arizona v. Washington,* 434 U.S. 497, 510, 98 S.Ct. 824, 832, 54 L.Ed.2d 717 (1978). But because a mistrial inevitably affects a constitutionally protected interest, reviewing courts are obliged to satisfy for themselves that the trial court has exercised "sound discretion" in declaring a mistrial. *Id.* at 515, 98 S.Ct. at 835.

■ Applying these legal principles here, the district court did not abuse its discretion in granting the state's motion for a mistrial if there was a manifest necessity to terminate the trial. In such cases, a retrial is not barred. Conversely, if there was no manifest necessity for a mistrial, the double-jeopardy principles of the federal and Minnesota constitutions prohibit Yeboah's retrial on the charges at issue in his initial trial.

"Manifest" means evident, obvious, clear, or plain. *Webster's New World College Dictionary* 874 (4th ed.2002). The term thus precludes any mere subjective or whimsical notion and, when applied here, requires instead that there have been an objective necessity, apparent not only to the district court but to any reviewing court as well.

■ A mistrial is appropriate only if there is a high degree of necessity, but the necessity need not be absolute. *Long,* 562 N.W.2d at 296. Furthermore, the manifest-necessity standard is flexible and seeks to balance fairness to the defendant against governmental and public interests. *Id.* In assessing the likelihood of manifest necessity, the district court must consider less drastic alternatives in the light of the defendant's constitutionally protected interest in being subjected to a single trial. *Id.* The prototypical example of manifest necessity is the deadlocked jury. *State v. Soyke,* 585 N.W.2d 418 (Minn.App.1998). A trial judge's reasonable belief that the jury will be unable to reach a unanimous verdict is the classic reason for a mistrial. *Washington,* 434 U.S. at 509, 98 S.Ct. at 832.

The jury—that unified, deliberative body of neutral and fair-minded citizens— is a constitutionally guaranteed mainstay of American jurisprudence. U.S. Const amend VI (criminal); amend. VII (civil). When citizens are being examined for possible jury service, they are customarily told that they must set aside their usual personal and business concerns and their daily pursuits and must devote their attention, focus, and energy solely to the trial for which they are chosen. On voir dire, lawyers typically ask prospective jurors whether they can give their undivided attention to the trial. Lawyers seek to uncover not only bias and prejudice but also the existence of intractable distractions. If an otherwise fair and neutral juror is distracted by some extraneous concern, the integrity of the jury as a unified body focused solely on the trial is diminished.

A critical role of a trial judge is to ensure, insofar as possible, that, from the

time the jurors swear or affirm they will satisfy the duties and honor the restrictions imposed on juries, until they return a verdict, they will function consistently as a fair, neutral, undistracted unit. The trial judge exercises a guardian role by instructing the jury, observing it throughout the trial, answering jurors' questions, dismissing jurors who lapse in the performance of their duties, and ultimately, if manifestly necessary, terminating the trial before the jury reaches a verdict.

The district court in Yeboah's trial faced what can fairly be characterized as a disintegrating jury. Not only was the actual number of jurors dwindling but also the extraneous concerns of some remaining jurors raised the genuine possibility of their significant distraction from the case at hand. One juror had been excused for a vacation. Another juror had a vacation scheduled to begin on the day the jury was to resume its deliberations. Still another juror had a vacation scheduled to begin if deliberations went beyond the next day. It was not at all certain when the ill juror might return. There was a disagreement between counsel as to whether a ten-member jury was acceptable. The foreperson reported that at that point there was not a likelihood that the jury could reach a unanimous verdict.

Add to this litany of problems the predicament the court would be in if it did not excuse jurors with impending vacations, having already excused one juror for that very reason. It is difficult to imagine a more disgruntled and distracted juror than one who has had to forgo a planned vacation under these circumstances. And such an attitude surely does not inure to the benefit of a criminal defendant.

■ Yeboah argues that the jury had not deliberated long enough to justify a conclusion that the jurors were deadlocked. There is no standard as to how long a jury must deliberate before the court may determine a deadlock and declare a mistrial. This is entirely within the court's discretion. *State v. Kelley*, 517 N.W.2d 905, 909 (Minn.1994).

But here, it was not only the possibility of deadlock that caused the court to grant a mistrial motion. The court considered that issue among the other problems with jurors' schedules and the attorneys' disagreement as to an acceptable number of jurors before granting the motion. As the court explained, it was the cumulative effect of the manifested jury problems that persuaded the court of the necessity for a mistrial.

Yeboah also contends that the court did not properly consider lesser alternatives before granting a mistrial. The court did consider ways to accommodate juror schedule problems, but none was likely to reasonably ensure the preservation of the integrity of the jury unit. Postponing deliberations would merely bring the proceedings closer to further vacation problems. As we have noted, refusing to excuse jurors who had vacation commitments would create the risk that those jurors would not devote the undistracted attention and time necessary to render a fair verdict. Reducing jury size, although hypothetically possible no matter what the number, ceased to be an option when the prosecutor refused to agree to fewer than ten jurors. *See* Minn. R.Crim. P. 26.01, subd. 1(4) (at any time before the verdict, the parties may stipulate to a lesser number of jurors than that provided by law).

Furthermore, even if the parties reached a stipulation as to a lesser number of jurors, the court's approval was still required, and the court never approved fewer than 11 jurors. *See id.*

During jury deliberations, serious problems arose that threatened to impair the

integrity of the jury. No available solution would have protected or ensured that integrity. It was necessary for the court to declare a mistrial, and, in doing so, the court did not abuse its discretion.

Yeboah's final contention is that the court improperly required the polling of the jury in the absence of the ill juror. Even if the court erred in ordering the polling of the jury, we need not consider this issue as it would not alter our holding that there was a manifest necessity for a mistrial.

## DECISION

Because of unsolvable problems with jurors' schedules, the apparent deadlock of the jury, and the disagreement of counsel as to the minimum number of jurors who might continue deliberations, the district court did not abuse its discretion in declaring a mistrial on grounds of manifest necessity and denying Yeboah's motion to prohibit a retrial.

**Affirmed.**