301 Ga. 122
FINAL COPY

S17A0646. LAGUERRE v. THE STATE.

HINES, Chief Justice.

Verlaine Laguerre appeals the denial of his plea of former jeopardy on the ground that his retrial for murder and related crimes would violate the federal and state constitutional prohibitions against double jeopardy.  For the reasons that follow, we affirm.

On March 20, 2012, a Fulton County grand jury indicted Laguerre and his co-defendant Prentice Baker, and the case proceeded to a joint trial.  Although voir dire was not transcribed, the trial court has stated in its order denying Laguerre's plea of former jeopardy that it informed the jury panel of the attorneys' estimate that the trial would last seven to nine days.[1] The parties agree that jury selection began on Tuesday, December 9, 2014, and, therefore, lasted nearly three days until the State called its first witness late in the afternoon on December 11, 2014.

---

[1] The record shows that both Baker and the State confirmed, and Laguerre does not dispute, that the jury was told of this estimate.

Over the next three weekdays, December 12, 15, and 16, the prosecutor began to present the State's case and had to revise his estimate for completing that presentation from Tuesday, December 16 to Friday, December 19 or later because of the slow pace of the trial. Baker's attorney stated that she expected to call seven witnesses, and she estimated that she would need a week to present Baker's case. One of the jurors was excused and replaced by one of the two alternates, another juror asked to leave early on December 19 to make a prepaid weekend trip, still another juror had a prepaid family trip beginning on Monday, December 22 to visit his mother-in-law who had terminal cancer, and a list prepared for the court showed that seven jurors had prepaid holiday trips, four of which were to begin on December 23. As a result, the trial court considered excusing a second juror and instructed the case manager to poll the jurors to determine all scheduling conflicts for the holidays.

On the morning of December 17, the trial court reported that on each day during both the week of December 22 and the following week, three to five jurors had conflicts, and that the first time that a complete jury could be back together would be Thursday, January 8, 2015. During an hour-long recess, the trial court and the attorneys went into chambers where they determined that they

2

had only two options: either the court should declare a mistrial or order a continuance for nearly three weeks from December 19 to January 8. After the in-chambers conference, the parties, through their attorneys, stated their positions on the record.

Baker acquiesced in a mistrial because of the jurors' apparent unpreparedness to be in a trial over nine days, and because it would not be in the best interest of the defense if it were blamed or placed in a negative light by continuation of the trial. The prosecutor also acquiesced in a mistrial as the "lesser of two evils," expressing his concern over the jurors' ability to recollect all the evidence after an extended break, especially when they were never told that there would be such a break. The prosecutor further emphasized that the jurors had made known their disgust with the duration of the process and its impact on their schedules and that the jurors could be prejudiced against the State or the defense through no fault of the State, just as two prospective jurors had to be excused for cause because of their bias against Laguerre's counsel due to the length of the voir dire process.

The trial court's case manager was requested to place her discussions with the jury on the record, and she indicated that because of the length and pace of

3

the trial, the jurors anticipated that they would not be able to return to their usual schedules by the week after next. After she specifically asked them about scheduling conflicts for the two upcoming weeks, they expressed "some exasperation." When she asked about the third week, there were "expressions of disgust" and "a general feeling of discord" among the jurors regarding "even the inquiry," and one of them slammed a notebook on the table.

Over Laguerre's objection, the trial court declared a mistrial, stating that the State in its discretion could try the case at a later date. In the subsequent order denying Laguerre's plea of former jeopardy, the trial court reviewed the circumstances set forth above and expressly found no evidence that the State was benefitted by a delay, engaged in any prosecutorial misconduct, or did anything to induce a mistrial. The court further stated that it had observed the reaction of the jurors during the trial, had carefully considered the alternative of resuming it on January 8, 2015, and was aware of the jury's frustration with the pace of the trial and with the possibility of recommencement after a prolonged, unanticipated break. The court concluded that, under all the particular facts and circumstances, the jury would not have been able to render a fair verdict and there was a high degree of necessity for a mistrial.

4

Laguerre contends that the trial court abused its discretion in denying his plea of former jeopardy because the circumstances did not demonstrate the "manifest necessity" that was constitutionally required to authorize a mistrial over his objection. Under the Double Jeopardy Clauses of the United States and Georgia Constitutions, "[t]rial courts may declare a mistrial over the defendant's objection, without barring retrial, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for doing so." *Harvey v. State*, 296 Ga. 823, 830 (2) (a) (770 SE2d 840) (2015) (citation and punctuation omitted). See also OCGA § 16-1-8 (a) (2) ("A prosecution is barred if the accused was formerly prosecuted for the same crime based upon the same material facts, if such former prosecution . . . [w]as terminated improperly after the jury was impaneled and sworn . . . ."), 16-1-8 (e) (enumerating various circumstances in which termination is not improper). This "manifest necessity" standard "cannot be interpreted literally, and . . . a mistrial is appropriate when there is a 'high degree' of necessity." *Harvey*, 296 Ga. at 831 (2) (a) (citation and punctuation omitted). Whether such necessity exists "is to be determined by weighing the defendant's right to have his trial completed before the particular tribunal against the interest of the public in having fair trials designed

5

to end in just judgments; and the decision must take into consideration all the surrounding circumstances." *Reed v. State*, 267 Ga. 482, 484 (1) (480 SE2d 27) (1997) (citation and punctuation omitted).

Where, as here, there is no showing of prosecutorial misconduct, the trial court has discretion in determining whether to grant a mistrial. See *Laster v. State*, 268 Ga. 172, 173 (1) (486 SE2d 153) (1997).

> The decisions of this Court and the U. S. Supreme Court emphasize that whether the required degree of necessity for a mistrial has been shown is a matter best judged by the trial court. The propriety of declaring a mistrial in the varying and often unique situations arising during the course of a criminal trial cannot be determined by the application of any mechanical formula.

*Harvey*, 296 Ga. at 831 (2) (a) (citations and punctuation omitted).

> A trial court has acted within its sound discretion in rejecting possible alternatives and in granting a mistrial, if reasonable judges could differ about the proper disposition, even though in a strict, literal sense, the mistrial is not necessary. This great deference means that the availability of another alternative does not without more render a mistrial order an abuse of sound discretion. Deference to the judge's sound discretion also precludes a reviewing court from assuming, in the absence of record evidence, that the trial judge deprived a defendant of constitutional rights.

*Spearman v. State*, 278 Ga. 327, 330 (2) (602 SE2d 568) (2004) (citation and punctuation omitted).

The trial judge is not required to make explicit findings of "manifest necessity" nor to articulate on the record all the factors which informed the deliberate exercise of his discretion. However, the record must show that the trial court actually exercised its discretion. For this reason, we have instructed trial courts to give careful, deliberate, and studious consideration to whether the circumstances demand a mistrial, with a keen eye toward other, less drastic, alternatives, calling for a recess if necessary and feasible to guard against hasty mistakes. Where it is clear from the record that the trial court actually exercised its discretion in deciding to grant a mistrial, the Double Jeopardy Clause generally will not bar retrial.

*Harvey*, 296 Ga. at 832 (2) (a) (citations and punctuation omitted).

As the State has acknowledged, a trial court's sua sponte declaration of a mistrial may well amount to an abuse of discretion where it is founded on juror convenience without any indication of juror discontent or bias and without any court inquiry into how long jurors in the trial need to be absent, when the trial could resume, or what the effect of a delay would be on the jury's ability to render a fair verdict. See *People v. Michael*, 394 NE2d 1134, 1138-1139 (N.Y. 1979); *People v. Capellan*, 844 NYS2d 578, 581 (Sup. Ct. 2007). In this case, however, the trial court did not act abruptly or hastily. Prior to the day that the mistrial was declared, the court was already concerned about the length of the trial and the continuing availability of the jurors. The trial court knew that the jurors had been selected on the basis of a reasonable expectation of discharge

7

within seven to nine days and thus prior to the holidays. See *United States v. Lynch*, 598 F2d 132, 135 (D.C. Cir. 1978). And they listed their scheduling conflicts for the court. It became apparent, during trial, that the trial would last through the holidays and would conflict with numerous jurors' travel plans. But they had not been forewarned of the potential need to take sufficient notes or otherwise prepare to recollect the evidence a month later.

> If an otherwise fair and neutral juror is distracted by some extraneous concern, the integrity of the jury as a unified body focused solely on the trial is diminished. A critical role of a trial judge is to ensure, insofar as possible, that, from the time the jurors swear or affirm they will satisfy the duties and honor the restrictions imposed on juries, until they return a verdict, they will function consistently as a fair, neutral, undistracted unit. [With the assistance of court officers, t]he trial judge exercises a guardian role by instructing the jury, observing it throughout the trial, answering jurors' questions, dismissing jurors who lapse in the performance of their duties, and ultimately, if manifestly necessary, terminating the trial before the jury reaches a verdict.

*State v. Yeboah*, 691 NW2d 87, 91-92 (Minn. App. 2005). In that role, the trial court in this case considered how to accommodate juror scheduling problems, but it reasonably decided that the jury unit likely could not be preserved in the circumstances, as more fully explored on the morning of the mistrial. See id. at 92 (holding that the trial court did not abuse its discretion in granting a mistrial

8

where, among other considerations, one juror had been excused for a vacation and another had a vacation scheduled for the day the jury was supposed to resume deliberations).

That morning, the trial court extensively discussed the matter with counsel for both co-defendants and the State, and the only alternative to a mistrial presented to the court was a nearly three-week continuance. See *Spearman*, 278 Ga. at 330 (2) (trial court did not err by failing to consider less drastic alternatives to a mistrial where the State presented the court with options involving a continuance and the defendant "was afforded the opportunity to suggest his own alternatives, but chose instead to object to" the State's proposal). Yet the statement of the trial court's case manager shows that what especially disturbed the jurors was the prospect that they would have to resume their service in three weeks after the holidays. Laguerre did not dispute that statement, nor did he object to the court's basing its mistrial decision on the information provided to it on the morning of December 17, 2014. Furthermore, there was a reasonable likelihood that the upset jurors would attribute responsibility for the delay to one of the parties, not unlike the two prospective jurors who, as the trial court noted in its order denying the plea of former

9

jeopardy, had been excused for cause for forming a bias against Laguerre's counsel resulting from the length of jury selection. The attitude of disgruntled and distracted jurors, together with the likelihood for them to place blame, "surely does not inure to the benefit of a criminal defendant." *Yeboah*, 691 NW2d at 92.

Under the circumstances, the trial judge "acted in order to assure a fair trial, not only for [Laguerre] but for his codefendant and the prosecution as well. He was present and in a far better position than we are to evaluate the complaining jurors' attitudes." *State v. Eldridge*, 562 P2d 276, 281 (Wash. App. 1977). See also *Michael*, 394 NE2d at 1138 ("The decision whether a mistrial is necessary because of juror bias is often based on subtle indications of discontent, not always apparent on the cold face of the record presented to an appellate court."). The record reflects that the trial court duly weighed the respective rights of all the parties before electing to declare a mistrial and that prior to announcing the mistrial, it carefully considered the only proposed lesser alternative of a continuance. See *Spearman*, 278 Ga. at 330 (2). Whether or not the court's discretion in regard to the conduct of the trial may have permitted it to require interruption of the case and return of the jury in about three weeks,

10

there is nothing shown regarding the circumstances of this case that would have compelled such a solution. See *Lumley v. State*, 184 Ga. App. 898, 899 (363 SE2d 69) (1987). We conclude that the trial court's decision to grant a mistrial was authorized, even if the mistrial was not strictly necessary, because under the totality of the attendant circumstances, reasonable judges could differ as to the type of disposition required to protect the fair trial rights of the parties. See *Spearman*, 278 Ga. at 330 (2). Compare *Otis v. State*, 298 Ga. 544, 545 (782 SE2d 654) (2016) (retrial was barred after a mistrial that was improperly based on the defendant's supposed violation of a notice requirement that was inapplicable under controlling precedent). Therefore, under the specific facts of this case, there was a "high degree of necessity" for a mistrial. *Renico v. Lett*, 559 U. S. 766, 774 (II) (130 SCt 1855, 176 LE2d 678) (2010) (citation and punctuation omitted). Accordingly, the trial court did not abuse its discretion by granting a mistrial over Laguerre's objection and subsequently denying his plea of former jeopardy.

Judgment affirmed. All the Justices concur.

Decided May 1, 2017.

Double jeopardy. Fulton Superior Court. Before Judge Campbell.

11

The Blaska Law Firm, Dana J. Norman; F. Renee R. Rockwell, for appellant.

Paul L. Howard, Jr., District Attorney, Paige Reese Whitaker, David K. Getachew-Smith, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, for appellee.