304 Ga. 747
FINAL COPY

S18A1162.  BLAKE v. THE STATE.

WARREN, Justice.

Appellant R'Shon Chauncey Blake challenges the trial court's denial of his plea in bar, based on double jeopardy, after the court declared a mistrial — over Blake's objection — of his murder trial during jury deliberations.  In its order denying Blake's plea in bar, the court determined that "jury-wide discussion of improper information about legal terminology compromised the integrity of a verdict and manifestly necessitated a mistrial."  Having reviewed the record, we conclude that the trial court did not abuse its discretion in declaring a mistrial and therefore affirm the denial of Blake's plea in bar.

1.     The record shows that in March 2015, Amountrae Hawkins, a marijuana dealer, was shot and killed during a drug transaction.  On June 23, 2015, a DeKalb County grand jury indicted Blake for malice murder, three counts of felony murder, armed robbery, aggravated assault, possession of a

firearm during the commission of a felony, and possession of a firearm by a convicted felon.

A jury trial began on Monday, June 19, 2017. Although the precise time that the jury began deliberating is unclear from the record, Blake acknowledges that "[t]he case was probably submitted to the jury mid-day on Thursday, [June 22], but in any event by the next day." After jury deliberations on Friday, June 23, and after the parties and other jurors had left for the weekend, the foreperson informed the court that one of the jurors had been doing outside research and discussing it with other jurors.

On the morning of Monday, June 26, the trial judge brought the foreperson into the courtroom to question her about the information she had presented before the weekend. The foreperson alleged that Juror 17 had sought information from a police detective, who was her friend, about "the meaning of the charges" of malice murder and felony murder, and had shared that information with other jurors. According to the foreperson, the information included explanations that malice murder was "if you walk into your home and you see your boyfriend cheating on you, you grabbed a vase and hit him over the head and then he ultimately died from that injury," but that "felony murder with assault is if you were riding in the car with them and that your friend saw

that and you would then be what she would think would — what she would have thought would be accessory." The foreperson confirmed that Juror 17 shared this information with the entire jury and that other jurors discussed it. The foreperson described Juror 17 as being "very stubborn on some of the things, and she just keeps referring back to those examples." She also informed the court that Juror 17 independently researched the possible sentences for malice murder and felony murder and shared that information with the other jurors, though the other jurors refused to discuss it because the trial judge had previously instructed them not to consider sentencing during their deliberations. Finally, the foreperson stated that she saw Juror 17 put a note in her purse, which the foreperson and at least one other juror thought proved that Juror 17 was doing other outside research.

After the trial judge finished questioning the foreperson and the foreperson left the courtroom, the judge expressed concern that the examples Juror 17 provided to the other jurors were legally inaccurate and that she was "providing that incorrect information to other jurors." The trial judge stated that she did not know if there was a way to cure the situation. Blake requested that Juror 17 be removed and that the jury be recharged, but the State argued that the trial could not proceed because if Blake were convicted, the juror-

research issue would be a significant issue on appeal. The court then brought Juror 17 into the courtroom for questioning.

Juror 17 denied discussing the case with a detective or with any other outside person, but admitted to conducting Internet research about certain words contained in the legal definitions of malice murder and felony murder and sharing that information with the other jurors. She then told the court that "pretty much everyone in there" also conducted independent, outside research and discussed this "new information" with the rest of the jury, including one juror who consulted with a lawyer friend about legal terminology and shared that information with the jury. Juror 17 concluded, "I think everybody did what I did from discussions."

The trial court denied Blake's request that each member of the jury be individually questioned because its questioning of two jurors — the foreperson and Juror 17 — confirmed that there appeared to be inappropriate discussions among the entire jury and that it did not have much choice but to declare a mistrial, which it did.

Before he could be retried, Blake filed a plea in bar, arguing that the State was barred from trying him again on the same charges because the trial court overruled his objection to the mistrial without a finding of manifest necessity.

After a hearing, the trial court denied the plea in bar.[1]  Blake filed a timely notice of appeal, and the case was docketed to the term beginning in December 2018 and orally argued on August 6, 2018.

2.    "The Double Jeopardy Clause of the Fifth Amendment, which applies to the states through the Fourteenth Amendment, says that '[n]o person shall be . . . subject for the same offence to be twice put in jeopardy of life or limb . . . .'" *Harvey v. State*, 296 Ga. 823, 830 (770 SE2d 840) (2015) (quoting U. S. Const. amend. V).  See also Ga. Const. of 1983, Art. I, Sec. I, Par. XVIII; OCGA § 16-1-8 (a).  Jeopardy attaches when the jury has been impaneled and sworn.  *State v. Cash*, 298 Ga. 90, 92 (779 SE2d 603) (2015).  But even after jeopardy has attached, "trial courts may declare a mistrial over the defendant's objection, without barring retrial, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for doing so." *Laguerre v. State*, 301 Ga. 122, 124 (799 SE2d 736) (2017) (citation and punctuation omitted).

In essence, "[t]his 'manifest necessity' standard" requires "'a "high degree" of necessity'" to grant a mistrial.  Id. at 124 (quoting *Harvey*, 296 Ga.

---

[1] This case originally was tried before Judge Courtney L. Johnson, who declared the mistrial, but was later reassigned to Judge Daniel M. Coursey, Jr., who entered the order denying Blake's plea in bar.

at 831); see also *Tubbs v. State*, 276 Ga. 751, 754 (583 SE2d 853) (2003). "Whether such necessity exists is to be determined by weighing the defendant's right to have his trial completed before the particular tribunal against the interest of the public in having fair trials designed to end in just judgments; and the decision must take into consideration all the surrounding circumstances." *Laguerre*, 301 Ga. at 124 (citation and punctuation omitted). Although the trial judge "is not required to make explicit findings of manifest necessity nor to articulate on the record all the factors which informed the deliberate exercise of his discretion," the record must at least "show that the trial court actually exercised its discretion." *Harvey*, 296 Ga. at 832 (citation and punctuation omitted); see also *Laguerre*, 301 Ga. at 125. And although trial courts should "give careful, deliberate, and studious consideration to whether the circumstances demand a mistrial, with a keen eye toward other, less drastic, alternatives," *Harvey*, 296 Ga. at 832 (citation and punctuation omitted), a court's rejection of other alternatives is a proper exercise of the court's discretion — and not an abuse — "if reasonable judges could differ about the proper disposition." *Tubbs*, 276 Ga. at 754 (citation and punctuation omitted).

In cases, like this one, where there is no prosecutorial misconduct and the basis for a mistrial is the effect of outside influences on the jury, a trial court has "broad discretion" in deciding whether to grant a mistrial and "great deference" is accorded to a decision that a mistrial was necessary. *Meadows v. State*, 303 Ga. 507, 511, 512 (813 SE2d 350) (2018) (citing *Arizona v. Washington*, 434 U. S. 497, 507-514 (98 SCt 824, 54 LE2d 717) (1978) and *Tubbs*, 276 Ga. at 754-755)). Because "the accused's right to a jury free of outside influence" is a safeguard to a defendant's entitlement to a fair and impartial trial, *Turpin v. Todd*, 271 Ga. 386, 389 (519 SE2d 678) (1999), we have long recognized that "the exposure of the jury to unauthorized outside influence prior to a completion of [trial] subjects the judicial process to severe dangers." *Owens v. State*, 251 Ga. 313, 322 (305 SE2d 102) (1983) (reversing convictions where a non-jury member entered the jury room and explained to jurors possible verdicts and sentences) (citing *Shaw v. State*, 83 Ga. 92, 100 (9 SE 768) (1889)). Indeed, Georgia courts have before reversed criminal convictions because outside influences, such as a juror's independent legal research, made their way into a jury room. See, e.g., *Chambers v. State*, 321 Ga. App. 512, 516-522 (739 SE2d 513) (2013) (reversing conviction because juror conducted Internet research about the definition of legal terms and

discussed that information, which included misinformation, with the rest of jury during deliberations); *Steele v. State*, 216 Ga. App. 276, 278-279 (454 SE2d 590) (1995) (reversing jury verdict and granting new trial because juror looked up encyclopedia definitions of legal terms as well as sentencing information and discussed that information with fellow jurors, who relied on it during deliberations), disapproved on other grounds by *Kennebrew v. State*, 267 Ga. 400, 404 n.2 (480 SE2d 1) (1996); *Moore v. State*, 172 Ga. App. 844, 845-846 (324 SE2d 760) (1984) (reversing jury verdict and granting new trial because juror conducted legal research about murder and voluntary manslaughter and then discussed it with other jurors).[2]  Cf. *Hodges v. State*, 302 Ga. 564, 568-569 (807 SE2d 856) (2017) (juror looking up definitions of words was harmless, in part because she did not share the information with other jurors); *O'Donnell v. Smith*, 294 Ga. 307, 309-310 (751 SE2d 324) (2013) (juror conducting Internet research about the case not shown to affect

---

[2] This Court has also reversed jury verdicts in cases where jurors impermissibly gathered outside evidence and shared it with the jury.  See, e.g., *Watkins v. State*, 237 Ga. 678, 683-685 (229 SE2d 465) (1976) (reversing convictions because two jurors made unauthorized visits to crime scene, conducted fact-finding, and reported findings to the rest of the jury). And we have affirmed trial-court declarations of mistrials where jurors inadvertently were provided inadmissible evidence during deliberations.  See *Varner v. State*, 285 Ga. 334, 334, 337 (676 SE2d 209) (2009) (no double jeopardy bar where mistrial declared based on inadvertent transmission of inadmissible evidence to jury).

verdict because no showing was made that he communicated his findings to other jurors).

The circumstances here were similar to, if not more troubling than, cases in which the Court of Appeals has reversed convictions because jurors researched legal terminology and shared that information with other jurors. Here, the foreperson informed the court that Juror 17 had consulted with a police detective about the meanings of malice murder and felony murder; the information Juror 17 gathered included legally inaccurate examples about the charged crimes; and Juror 17 shared that information with the rest of the jury, which discussed it during deliberations. The foreperson also stated that Juror 17 conducted independent research on sentencing for the charged crimes and shared that information with the jury.

Faced with these allegations of juror misconduct, the trial judge separately questioned Juror 17 on the record and with the parties present. Although Juror 17 flatly denied discussing the case with non-jurors, she admitted conducting Internet research about the legal differences between malice murder and felony murder and that she shared her findings with the other jurors. She also asserted that other jurors conducted outside research,

including one juror who consulted with a lawyer about legal terminology, and discussed that "new information" with the rest of the jury.

The record shows that the trial judge identified a significant likelihood that the jury had been exposed to outside information during deliberations, and that she recognized the threat that posed to Blake's right to a fair and impartial trial. See *Turpin*, 271 Ga. at 389; *Owens*, 251 Ga. at 321. She also acknowledged that the jury's exposure to outside information would be "a major issue on appeal." The trial judge, however, did not immediately declare a mistrial; instead, she deliberately exercised her discretion by first questioning the foreperson who made the allegations of juror misconduct, and then questioning the juror accused of the misconduct, to better understand the full set of circumstances. And although Juror 17 denied discussing the case with anyone outside of the jury, she asserted that she — along with "everybody" else on the jury — conducted independent, outside research and discussed those findings, a claim that raised even more concerns than the jury foreperson initially presented to the court. See *Laguerre*, 301 Ga. at 127 (emphasizing that trial judges are in a "far better position" than appellate court to evaluate jurors' conduct).

Moreover, the record shows that the trial judge considered other possible alternatives such as removing and replacing Juror 17, recharging the jury and allowing deliberations to continue, and conducting further inquiry of the remaining jurors.  But in a reasonable exercise of her discretion, the trial judge rejected those alternatives and concluded, "I don't know that I have much choice but to declare a mistrial."  See *Laguerre*, 301 Ga. at 124-125; cf. *Meadows*, 303 Ga. at 512.  Under these circumstances, we conclude that the trial court did not abuse its broad discretion in determining that there was a high degree of necessity to declare a mistrial over Blake's objection.  Thus, retrial is not barred, and the denial of Blake's plea in bar is affirmed.

Judgment affirmed.  All the Justices concur.

Decided December 10, 2018.

Murder. DeKalb Superior Court. Before Judge Coursey.

James C. Bonner, Jr., Michael W. Tarleton, for appellant.

Sherry Boston, District Attorney, Deborah D. Wellborn, Helen P. Pott, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew B. Crowder, Assistant Attorney General, for appellee.