315 Ga. 399
FINAL COPY

S22A0870.  HIGHTOWER v. THE STATE.

MCMILLIAN, Justice.

Michelle Antoinette Hightower was charged with malice murder and other crimes in connection with the shooting death of Michael McGee on September 5, 2017. Hightower's trial on these charges began in the Superior Court of Fulton County on March 9, 2020, and four days later, on March 13, after the Chief Judge of the Atlanta Judicial Circuit issued an order declaring a judicial emergency due to the continued transmission of the COVID-19 virus, the trial court declared a mistrial in Hightower's case, over defense counsel's objections. Hightower subsequently filed a plea in bar and motion to dismiss the indictment (collectively, the "Plea in Bar"), asserting that further prosecution of her case was barred by the double jeopardy clauses of the state and federal constitutions because there was no manifest necessity to declare a mistrial and

because the trial court did not exercise its discretion or consider reasonable alternatives prior to declaring the mistrial. Following a hearing, the trial court denied the Plea in Bar on May 21, 2021, and Hightower appeals.[1] Because we conclude that the trial court acted within its discretion in determining that there was a manifest necessity for a mistrial, we affirm.

1. Voir dire in Hightower's trial began on the morning of Monday, March 9, 2020, and was completed the next day, on March 10. The jury was then selected and sworn. The same day, counsel gave their opening statements, and the State presented the testimony of three witnesses. On Wednesday, March 11, the trial court heard argument on several motions, and the State presented two additional witnesses. The parties also conducted voir dire of a proposed expert witness whom the State wished to call to rebut Hightower's defense of battered-person syndrome, and the witness

---

[1] Although Hightower originally filed her appeal in 2021, at Hightower's request, the case was remanded to allow for completion of the record, and it was re-docketed under the current case number when it returned to this Court. The case was orally argued on August 23, 2022.

was qualified as an expert. The trial court recessed the trial proceedings for the next day, Thursday, March 12, to allow the State's expert to interview Hightower and to allow the parties to prepare and exchange expert reports on the battered-person defense.

That evening, Christopher S. Brasher, chief judge of both the Atlanta Judicial Circuit and the Superior Court of Fulton County, sent an e-mail notifying all Fulton County superior and state court judges, the Fulton County District Attorney's office, and the county's Public Defender's office,[2] among others, of his intention to issue an order declaring a judicial emergency effective Monday, March 16, which would "suspend the calling and empaneling of all jurors and the conduct of all jury trials" in Fulton County.

Chief Judge Brasher sent another e-mail at 8:20 a.m. on Friday, March 13, attaching a copy of his order, which was entered about an hour later, at 9:23 a.m. The order, citing OCGA § 38-3-61,[3]

---

[2] Hightower was represented by the Public Defender's office at trial.
[3] OCGA § 38-3-61 (a) empowers an "authorized judicial official" to declare

3

declared a judicial emergency in the Atlanta Judicial Circuit, which is "composed of the County of Fulton." OCGA § 15-6-1 (3). This declaration was based on a "serious health emergency" and a determination that the emergency "substantially endangers or infringes upon the normal functioning of the judicial system as it relates to jury service, . . . and any non-essential matters, unless they can be conducted via video or teleconferencing." The order defined the nature of the emergency as "the continued transmission of Coronavirus/COVID-19 throughout Fulton County and the potential infection of those who are required to appear in our courts and interact with large groups due to jury service." The order further provided:

> [T]he undersigned hereby makes this declaration of a judicial emergency affecting all courts and clerk's offices in Fulton County as it relates to jury service, including grand jury service and any non-essential matters, unless they can be conducted via video or teleconferencing.
> Accordingly, IT IS THE ORDER of the Court that no

judicial emergencies, and OCGA § 38-3-60 (1) (B) defines "[a]uthorized judicial official" to include "[a] chief judge of a Georgia superior court judicial circuit[.]" Chief Judge Brasher signed the Fulton County Order in both his capacities as chief judge of the Superior Court of Fulton County and chief judge of the Atlanta Judicial Circuit.

jurors or grand jurors shall report and no jury trials shall be held for a period of **thirty (30) days** from the date of the entry of this Order [(the "Fulton County Order")].

(Emphasis in original.)

The proceedings in Hightower's case later recommenced at 9:51 a.m., outside the presence of the jury, and after addressing preliminary evidentiary matters, the trial court announced that it would be taking judicial notice of the Fulton County Order and that it was also anticipating a similar statewide order from then-Chief Justice Harold D. Melton of this Court. As a result, the trial court said it anticipated that it would be declaring a mistrial in Hightower's case and asked counsel if they wanted to "place something on the record."

The State had no objections, but Hightower's counsel objected to the mistrial and asked the court to consider less drastic alternatives. Defense counsel proposed that the trial continue through the weekend with the belief that it could be concluded by Sunday "before the judicial emergency has been declared." In the alternative, defense counsel suggested that the trial simply be

continued until it could be reconvened with the same jury and a new trial date set "once the judicial emergency is over." After the jurors returned to the courtroom, the trial court informed them of the Fulton County Order declaring a judicial emergency,[4] and announced that it was declaring a mistrial based on the judicial emergency. The trial court then released the jury from further service.[5]

The following week, on March 19, 2020, the trial court entered

---

[4] The Court explained to the jury that

[t]he existence of the judicial emergency in Fulton County is related to the continued transmission of the coronavirus, COVID-19 virus, throughout Fulton County and the potential infection of those who are required to appear in our courts and interact with large groups due to jury service including grand jury service or other large nonessential calendars.

[5] The then-Chief Justice of this Court issued the first in a series of orders declaring a statewide judicial emergency the next day, on Saturday, March 14, 2020. That order provided, in pertinent part:

[T]rials in any criminal case for which a jury has been empaneled and the trial has commenced as of the date of this order shall continue to conclusion, unless good cause exists to suspend the trial or declare a mistrial. The decision whether to suspend a criminal trial or declare a mistrial rests with the judge presiding over the case.

Although this statewide order contradicted the Fulton County Order by allowing criminal trials in progress to continue to conclusion, it had not yet been issued when the trial court declared the mistrial.

a written order regarding the grant of the mistrial in Hightower's case, which recited the events surrounding the Fulton County Order, and stated:

> By declaring a mistrial in this case, the Court declares explicitly that a manifest necessity warranted the declaration of the mistrial in this case, specifically the existence of a judicial emergency in Fulton County. Further, this Court specifically declares that the entry of the order of mistrial, in this case, is designed to ensure that the ends of justice will be served.

Hightower filed the Plea in Bar over one year later, on April 7, 2021. After an evidentiary hearing, the trial court denied the Plea in Bar in a written order entered May 21, 2021. That order recited that in making the decision to declare a mistrial, the trial court was aware that "a judicial emergency [was] being declared due to the [c]oronavirus/COVID-19"; that COVID-19 "was highly contagious and could cause severe illness and death to those who contracted it"; and that "medical professionals in the media were urging people to stay at home to avoid contracting and transmitting the virus to others." The order also said that the trial court further "considered the fact that the trial was not likely to conclude before the end of the

7

day and that the courtroom did not have adequate infrastructure in place to prevent the contraction or spread of the coronavirus." Based on these factors, the trial court concluded "that a high degree of necessity existed such that a mistrial was warranted."

2. Hightower asserts on appeal that her Plea in Bar should have been granted because the trial court erred in declaring a mistrial sua sponte over her objection without carefully exercising sound discretion, without considering less drastic alternatives, and without a manifest necessity.

"The Double Jeopardy Clause of the Fifth Amendment, which applies to the states through the Fourteenth Amendment, says '(n)o person shall be . . . subject for the same offence to be twice put in jeopardy of life or limb[.]'" *Meadows v. State*, 303 Ga. 507, 510 (2) (813 SE2d 350) (2018); U. S. Const. Amend. V. See also Ga. Const. of 1983, Art. I, Sec. I, Par. XVIII; OCGA § 16-1-8 (a).[6] "Jeopardy

---

[6] The Double Jeopardy Clause of the Georgia Constitution provides: "No person shall be put in jeopardy of life or liberty more than once for the same offense except when a new trial has been granted after conviction or in case of mistrial." Art. I, Sec. I, Par. XVIII. Georgia also has a statutory prohibition

8

attaches when the jury has been impaneled and sworn." *Blake v. State*, 304 Ga. 747, 749 (2) (822 SE2d 207) (2018). But "[e]ven after jeopardy has attached, trial courts may declare a mistrial over the defendant's objection, without barring retrial, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for doing so." *Rios v. State*, 311 Ga. 639, 643 (2) (859 SE2d 65) (2021) (citation and punctuation omitted). See also

---

against multiple prosecutions for the same conduct. OCGA § 16-1-8 (a) provides:

> A prosecution is barred if the accused was formerly prosecuted for the same crime based upon the same material facts, if such former prosecution:
>> (1) Resulted in either a conviction or an acquittal; or
>> (2) Was terminated improperly after the jury was impaneled and sworn or, in a trial before a court without a jury, after the first witness was sworn but before findings were rendered by the trier of facts or after a plea of guilty was accepted by the court.

We note that

> [i]n determining whether a second trial is permitted on the same charges following a mistrial, our case law has treated all forms of double jeopardy claims, whether under the Constitution of the United States, under the Georgia Constitution, or under the Georgia Code, in a manner consistent with case law from the United States Supreme Court regarding the Fifth Amendment[.]

*Carman v. State*, 304 Ga. 21, 25 (2) (815 SE2d 860) (2018). And Hightower does not argue that a different analysis should apply under the Georgia Constitution.

9

*United States v. Dinitz*, 424 U.S. 600, 606-07 (II) (96 SCt 1075, 47 LE2d 267) (1976) (if "a mistrial has been declared without the defendant's request or consent," "the question whether under the Double Jeopardy Clause there can be a new trial . . . depends on whether 'there is a manifest necessity for the (mistrial)'" (citation omitted)).

The manifest necessity standard requires a "high degree of necessity" to grant a mistrial. *Laguerre v. State*, 301 Ga. 122, 124 (799 SE2d 736) (2017) (citation and punctuation omitted). See also *Tubbs v. State*, 276 Ga. 751, 754 (3) (583 SE2d 853) (2003) ("Manifest necessity can exist for reasons deemed compelling by the trial court, especially where the ends of substantial justice cannot be attained without discontinuing the trial." (citation and punctuation omitted)). "Whether such necessity exists is to be determined by weighing the defendant's right to have his trial completed before the particular tribunal against the interest of the public in having fair trials designed to end in just judgments; and the decision must take into consideration all the surrounding

10

circumstances." *Laguerre*, 301 Ga. at 124 (citation and punctuation omitted).

Therefore, in the absence of prosecutorial misconduct, "the decision whether to grant a mistrial is reserved to the '*broad discretion*' of the trial judge." *Carman v. State*, 304 Ga. 21, 27 (2) (a) (815 SE2d 860) (2018) (punctuation omitted; emphasis in original), quoting *Renico v. Lett*, 559 U.S. 766, 774 (II) (130 SCt 1855, 176 LE2d 678) (2010). See also *Laguerre*, 301 Ga. at 125; *Tubbs*, 276 Ga. at 754-55 (3).

> The decisions of this Court and the U.S. Supreme Court emphasize that whether the required degree of necessity for a mistrial has been shown is a matter best judged by the trial court. The propriety of declaring a mistrial in the varying and often unique situations arising during the course of a criminal trial cannot be determined by the application of any mechanical formula.

*Harvey v. State*, 296 Ga. 823, 831 (2) (a) (770 SE2d 840) (2015) (citations and punctuation omitted) (quoting *Illinois v. Somerville*, 410 U.S. 458, 462 (II) (93 SCt 1066, 35 LE2d 425) (1973)). And "great deference is accorded to a decision that a mistrial was necessary." *Blake*, 304 Ga. at 750 (2) (citation and punctuation omitted).

Although trial courts should "give careful, deliberate, and studious consideration to whether the circumstances demand a mistrial, with a keen eye toward other, less drastic, alternatives, a court's rejection of other alternatives is a proper exercise of the court's discretion—and not an abuse—if reasonable judges could differ about the proper disposition." *Blake*, 304 Ga. at 749 (2) (citation and punctuation omitted). See also *Harvey*, 296 Ga. at 832 (2) (a); *Tubbs*, 276 Ga. at 754-55 (3). A trial court "is not required to make explicit findings of manifest necessity nor to articulate on the record all the factors which informed the deliberate exercise of his discretion," but the record must at least "show that the trial court actually exercised its discretion." *Blake*, 304 Ga. at 749 (2) (citation and punctuation omitted). See also *Laguerre*, 301 Ga. at 125.

Hightower argues that the trial court abused its discretion in determining that there was a manifest necessity to declare a mistrial and in failing to consider less drastic alternatives. She asserts that the trial court based its mistrial decision, not on any problem with her trial, but rather on the Fulton County Order and

12

its underlying concerns for "community safety." Hightower asserts that such concerns are unrelated to any problem that occurred at her trial and therefore not appropriate to consider in determining whether to grant a mistrial.

However, in considering the issue of double jeopardy, the United States Supreme Court has recognized that considering the health of trial participants can be integral to conducting a criminal trial. The Court has acknowledged that

> a criminal trial is, even in the best of circumstances, a complicated affair to manage. The proceedings are dependent in the first instance on the most elementary sort of considerations, e.g., the health of the various witnesses, parties, attorneys, jurors, etc., all of whom must be prepared to arrive at the courthouse at set times.

*United States v. Jorn*, 400 U.S. 470, 479-80 (II) (91 SCt 547, 27 LE2d 543) (1971). Thus, the Supreme Court concluded that application of a mechanical rule barring retrial whenever a jury is discharged without a defendant's consent would be unworkable; rather, "a defendant's valued right to have his trial completed by a particular tribunal must in some instances be subordinated to the public's

13

interest in fair trials designed to end in just judgments." Id. at 480 (II) (citation and punctuation omitted). See also *Arizona v. Washington*, 434 U.S. 497, 505 (II) (98 SCt 824, 54 LE2d 717) (1978) ("Because of the variety of circumstances that may make it necessary to discharge a jury before a trial is concluded," which "do not invariably create unfairness to the accused," a defendant's "valued right to have the trial concluded by a particular tribunal is sometimes subordinate to the public interest in affording the prosecutor one full and fair opportunity to present his evidence to an impartial jury.").

Moreover, we do not view the trial court's decision to declare a mistrial in hindsight, but rather from the court's perspective at the time it exercised its discretion. See *Harvey*, 296 Ga. at 833 (2) (b) ("[T]he question before us is not whether the trial court exercised its discretion to grant a mistrial with care and full deliberation or whether, with the benefit of hindsight, we would say that a mistrial was necessary. Our task is only to decide whether the trial court abused its broad discretion."); *Tankersley v. Stepp*, 266 Ga. 892, 892

(1) (471 SE2d 882) (1996) (trial court did not abuse its discretion in denying a continuance or mistrial where witness "evidenced an inability to respond" to cross-examination questions, even though hindsight may have revealed that witness had a serious illness during trial).

At the time the trial court declared a mistrial in this case, the COVID-19 pandemic had created an unexpected and unprecedented global health crisis, which posed a potential threat to the health of the parties, including the defendant, witnesses, jurors, counsel, and court personnel required to appear in court and, as the Fulton County Order stated, "substantially endanger[ed] or infringe[d] upon the normal functioning of the judicial system as it relates to jury service." Hightower's trial took place early in the pandemic, when very little was understood about the nature or spread of the COVID-19 virus, understandably prompting caution by public officials in addressing the crisis based on the circumstances in the surrounding area. The Fulton County Order declared that an emergency existed based on "the continued transmission of

15

Coronavirus/COVID-19 throughout Fulton County."

The trial court was also aware that health issues already had arisen among the participants in Hightower's trial. On Tuesday, March 10, one juror informed the court that she was concerned she had "strep" as she had a sore throat that had "progressively gotten worse," and the State informed the trial court that one of its witnesses called to report that she had "flu-like" symptoms that were "getting worse."[7] These circumstances demonstrate that, contrary to Hightower's argument, community health concerns potentially arising from COVID-19 presented a problem for Hightower's trial. Moreover, the record belies Hightower's assertion that the trial court abused its discretion by not considering less drastic alternatives. Before declaring a mistrial, the trial court

---

[7] The juror volunteered to visit an urgent care facility, and the trial court accepted her offer, asking the juror to give the court an update on her condition. In reviewing the record on appeal, we could find no further mention of the juror in the trial transcript. As to the State's witness, the trial court directed the State to inform the witness that she was to honor the subpoena served upon her. The State did not call the ailing witness to testify before the mistrial was declared on March 13, but the prosecutor represented that day that the State believed that it would be able to present the witness's testimony in court although no date was given for the witness's availability.

informed the parties of the Fulton County Order and that it was anticipating declaring a mistrial, but it nonetheless solicited argument from counsel on the matter. The State raised no objection, but the defense objected and was given an opportunity to argue the issue. Defense counsel suggested two options: (1) holding the trial over the weekend to be completed "before the judicial emergency has been declared" on Monday, March 16, and (2) ordering a continuance until "the judicial emergency is over" when the trial could be reset before the same jury. After hearing and having the opportunity to consider the defense's argument and suggestions, the trial court declared the mistrial.

We conclude that, under the circumstances present in this case, rejecting the defendant's suggested alternatives was within the trial court's discretion. The first alternative proposed a procedure that would have violated the Fulton County Order, which had already declared a judicial emergency as of March 13 and ordered that jurors should not appear for jury service for 30 days

17

after that date.[8] And nothing in this proposal would have addressed the concerns underlying that order for protecting the trial participants' health. Moreover, implied in this suggestion is an acknowledgment by the defense that the trial could not have been completed on March 13, and thus it represents an implicit concession that proceeding with the trial that day would not have resulted in a verdict.[9] The second alternative would have necessitated a continuance for an indefinite period of time. In light of the uncertainties surrounding the pandemic, no one could predict when the judicial emergency would be over, and there was no assurance that the same jury would have been available to continue the trial at an unknown point in the future. See *Carman*, 304 Ga. at 33 (2) (b) (affirming denial of plea in bar following mistrial because

---

[8] Although the statewide order issued on March 14 allowed criminal jury trials in progress to "continue to conclusion, unless good cause exists to suspend the trial or declare a mistrial," as previously noted, the trial court did not have the benefit of this order in considering alternatives. And, in any event, the trial court found a manifest necessity to declare a mistrial, which is "good cause."

[9] At the beginning of Hightower's trial, counsel estimated that the trial would take a week to complete, but the trial had already been recessed for one full day to allow the State's expert to interview Hightower and the parties to exchange expert reports on her battered-person defense.

18

defense counsel was experiencing severe emotional distress following suicide attempt of close family member and it was unclear when counsel would be able to return to try the case). See also *State v. Smith*, 465 N.J. Super. 515, 542 (III) (B) (ii) (244 A3d 296) (App. Div. 2020) (affirming grant of mistrial where continuance or adjournment for an indefinite period was not feasible given the state of the COVID-19 pandemic).

Accordingly, given the COVID-related judicial emergency and 30-day prohibition on jury service in Fulton County, and the potentially COVID-related health concerns among the trial's participants, we conclude that the trial court did not abuse its discretion in declaring a mistrial based on manifest necessity or in denying Hightower's Plea in Bar.[10] See *Carman*, 304 Ga. at 33 (2) (b) (no abuse of discretion in declaring mistrial due to severe emotional

---

[10] Although the existence of a judicial emergency based on the widespread transmission of the COVID-19 virus in Fulton County alone may have justified a mistrial and even without a showing that the trial participants were actually affected by the virus, we need not definitively decide that question in this case because participants in Hightower's trial were also experiencing health concerns potentially related to the COVID-19 pandemic.

distress of defense counsel who had worked on the death penalty case for two years where backup counsel had only been involved for two weeks); *Laguerre*, 301 Ga. at 126 (no abuse of discretion in declaring mistrial after the trial court "reasonably decided that the jury unit likely could not be preserved in the circumstances"); *Spearman v. State*, 278 Ga. 327, 329 (1) (602 SE2d 568) (2004) (no abuse of discretion in declaring mistrial based on prosecution witness's unavailability, which was due solely to an unforeseeable accident that occurred the weekend before the trial, where there was no evidence that prosecution knew of witness's unavailability before beginning trial).

*Judgment affirmed. All the Justices concur.*

Decided January 18, 2023.

Murder, etc. Fulton Superior Court. Before Judge Cox.

*Jessica M. Sully, Stephen R. Scarborough*, for appellant.

*Fani T. Willis, District Attorney, Lyndsey H. Rudder, Kevin C. Armstrong, Ruth M. Pawlak, Simone M. Hylton, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General*, for appellee.