308 Ga. 570
FINAL COPY

S20A0399. HEYWARD v. THE STATE.

PETERSON, Justice.

Larmell Heyward appeals his convictions for malice murder and possession of a firearm during the commission of a felony in connection with the shooting death of Ramon Rogers.[1] Heyward argues that the trial court erred in denying his request to charge the jury on voluntary manslaughter. We affirm because the trial court's

---

[1] Rogers was killed on May 4, 2007. In April 2010, a Fulton County grand jury indicted Heyward for malice murder, two counts of felony murder (predicated on aggravated assault and possession of a firearm by a convicted felon), aggravated assault, possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon. Following a June 2012 trial, a jury found Heyward guilty on all counts. The trial court sentenced Heyward to serve life in prison without the possibility of parole for malice murder and a five-year consecutive term for possession of a firearm during the commission of a felony. The remaining counts merged or were vacated by operation of law. The State has not challenged the merger of the possession of a firearm by a convicted felon count, and so we decline to address any error with respect to that count. See *Dixon v. State*, 302 Ga. 691, 698 (4) (808 SE2d 696) (2017).

Heyward, in July 2012, filed a timely motion for new trial and amended the motion through new counsel seven years later in May 2019. On July 8, 2019, the trial court denied Heyward's motion for new trial following a hearing. Heyward timely appealed, and his case was docketed to this Court's term beginning in December 2019 and submitted for a decision on the briefs.

refusal to give the charge was harmless because there was no realistic probability that the jury would have accepted the — at most — slight evidence of voluntary manslaughter in the light of the strong evidence of malice murder.

Viewed in the light most favorable to the jury's verdicts, the trial evidence showed the following. Heyward and Rogers lived in the same Fulton County apartment complex in May 2007. On May 3, Rogers, who was known as "Bear," expressed frustration to his roommate about Heyward owing him money.

That same day, Heyward went to Loreal Poyehress's apartment located in the same apartment complex, because he wanted to speak with Ontario Lindsey. Heyward identified himself to Poyehress as "New York," and Poyehress told Lindsey that he had a guest. Heyward told Lindsey that he had an "incident with this dude" and was ready to "kill this f'ing n***a." Heyward explained that he was referring to "Bear," and showed Lindsey a small .32-caliber silver revolver with a black handle. Poyehress overheard Heyward threatening to shoot someone.

The next day, residents at the apartment complex called 911 after seeing one man chasing another and hearing gunshots. One witness reported that the man giving chase was shooting at the first, and that the first did not have a gun. Another witness said she heard gunshots, then saw the men running, with the first man running very fast.

The responding officer was directed to a building where he came upon a trail of blood leading to Rogers, who was lying face down on the second floor landing. The responding officer did not see any weapons on or near Rogers. Rogers was still alive when the officer arrived but later died from multiple gunshot wounds to the back. He also had a gunshot wound to his hand.

During his investigation, the lead detective identified Heyward as a possible suspect after interviewing witnesses. Shortly thereafter, the detective received information from a New York City detective that Heyward had fled to New York. Heyward was staying at a residence where the New York City detective had recovered a silver .32-caliber revolver with a black handle during a search

conducted on an unrelated investigation. Heyward, after waiving his *Miranda*[2] rights, admitted to the New York City detective that he was involved in a shooting in Atlanta but claimed it was in self-defense. Ballistics testing and analysis confirmed that the bullets recovered from Rogers's body were fired from the .32-caliber revolver recovered in New York.

1. Heyward does not challenge the sufficiency of the evidence, but it is our customary practice in murder cases to review the record independently to determine whether the evidence was legally sufficient. Having done so, we conclude that the evidence was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Heyward was guilty of the crimes for which he was convicted. See *Jackson v. Virginia*, 443 U.S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979); see also *Walker v. State*, 301 Ga. 482, 484 (1) (801 SE2d 804) (2017) ("The jury is free to reject any evidence in support of a justification defense and to accept the evidence that the shooting was not done in self-defense." (citation and punctuation

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

omitted)).

2. Heyward argues that the trial court erred in denying his request for a jury charge on voluntary manslaughter, arguing that his own trial testimony supported the charge. Any error in failing to give the charge was harmless.

In a murder case, a trial court is required to give a defendant's requested charge on the lesser offense of voluntary manslaughter if there is any evidence, however slight, to support it. See *Blake v. State*, 292 Ga. 516, 518 (3) (739 SE2d 319) (2013). Such a charge is supported where there is any evidence that the defendant killed the victim "solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person[.]" OCGA § 16-5-2 (a); see also *Johnson v. State*, 297 Ga. 839, 842 (2) (778 SE2d 769) (2015). Although a charge on voluntary manslaughter is not mutually exclusive with a charge on self-defense, "[t]he distinguishing characteristic between the two claims is whether the accused was so influenced and excited that he reacted passionately rather than

simply in an attempt to defend himself." *Harris v. State*, 299 Ga. 642, 644 (2) (791 SE2d 32) (2016) (citation omitted). Only when this passion is shown will a charge on voluntary manslaughter be warranted. Id.

In his trial testimony, Heyward said that he and Rogers had several run-ins prior to the shooting, and Rogers once wanted to fight because he thought Heyward was disrespecting him. According to Heyward, on the day of the shooting, Heyward was walking home with his daughter when Rogers approached him, brandished a gun, and threatened to shoot him and his daughter in the head. Heyward told Rogers that he did not have a problem with Rogers, so Rogers allowed them to leave but warned Heyward to "watch [his] back." Later that same day, Heyward went outside to take out the trash and was again confronted by Rogers, who drew a firearm and said, "You know what it is," which Heyward interpreted to mean that Rogers intended to rob him. Heyward said that Rogers directed him into one building, and once they got inside the men started fighting, and Heyward grabbed Rogers and wrestled the gun away from him.

Heyward said that he was "fighting for [his] life at this point." Heyward shot wildly at Rogers, exited the building in a scared state, and began running back to his apartment. Heyward said that Rogers chased him; as they ran, someone shot at Heyward. Heyward also testified that he fled to New York because he did not know anyone in Atlanta. He explained that he took the gun with him because he was not trying to hide evidence, and he was going to turn himself in. He admitted that he did not turn himself in once he got to New York.

Heyward argues on appeal that a voluntary manslaughter charge was warranted by his testimony describing a situation in which he fired wildly at Rogers in a panicked and scared state because he believed Rogers was going to kill him. He acknowledges that his fear of death was arguably no longer reasonable once he took control of Rogers's gun. But he argues that, due to the events happening contemporaneously, his passions were still aroused by Rogers's initial attack.

Even if Heyward reacted as a result of a sudden and violent passion, any error in failing to give a voluntary manslaughter charge

was harmless. See *Hatney v. State*, 308 Ga. \_\_\_, \_\_\_ (2) (\_\_\_ SE2d \_\_\_) (2020) ("Assuming without deciding that the evidence in this [felony murder] case warranted a jury instruction on voluntary manslaughter, we conclude that any error in failing to give the requested jury instruction was harmless."); *Hodges v. State*, 302 Ga. 564, 567 (3) (807 SE2d 856) (2017) ("The failure to give a requested charge, even if authorized by the evidence, can be harmless error."). An error is harmless when it is highly probable that the error did not contribute to the verdict. See *Brown v. State*, 289 Ga. 259, 261 (2) (710 SE2d 751) (2011).

Any error was harmless here because there was substantial evidence of Heyward's guilt, and it is highly probable that a jury instructed on voluntary manslaughter nonetheless would have rejected such a claim in the light of the trial evidence other than Heyward's self-serving story. Despite Heyward's claim that he shot Rogers in reaction to Rogers's violent actions, the evidence shows that Heyward had discussed killing Rogers one day before the shooting. Lindsey testified that during that conversation, Heyward

told Lindsey about an encounter he had with Rogers, and that he wanted to kill "Bear," which was Rogers's nickname. Poyehress overheard Heyward making these threats. At the time he talked about killing Rogers, Heyward showed Lindsey a silver .32-caliber revolver with a black handle, which matched the description of the murder weapon. Heyward's possession of a weapon that matched the murder weapon prior to the crime undercuts his claim that he took Rogers's gun during the encounter.[3]

In investigating the case, the detective never came across any evidence that Rogers possessed a gun. And no witness ever said that they saw Rogers with a gun. Indeed, despite Heyward's claim that he shot at Rogers, kept the gun, and Rogers continued to chase him, an unbiased witness reported the man chasing another man had the gun, not the other way around. Moreover, although Heyward claimed that he kept the gun because he did not want to hide

---

[3] During cross-examination of Lindsey, Heyward's lawyer brought out that Lindsey was then on probation for a 2011 crime, suggesting that Lindsey had an incentive to help the State. But on redirect, Lindsey testified that he relayed the same details to the investigating detective years earlier (and before his 2011 crime) in the immediate aftermath of the shooting.

evidence and planned to turn himself in as soon as he got to New York, he admitted that he did not turn himself in when he got there. Given the clear holes in Heyward's version of events, which he claimed supported voluntary manslaughter, and the substantial evidence of guilt against him, it is highly probable that the failure to give a voluntary manslaughter charge did not contribute to the verdict.

*Judgment affirmed. All the Justices concur.*

DECIDED APRIL 20, 2020.
Murder. Fulton Superior Court. Before Judge Millender.
*Cody J. Jung*, for appellant.
*Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, Tristan W. Gillespie, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Leslie A. Coots, Assistant Attorney General*, for appellee.