NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: July 1, 2025

S25A0755. HILTON v. THE STATE.

WARREN, Presiding Justice.

Gregory M. Hilton was convicted of malice murder and other crimes after he shot and killed his next-door neighbor, Tommy Allen.[1] In his sole contention on appeal, Hilton argues that the trial

---

[1] The crimes occurred on January 29, 2018. On April 11, 2018, a Chatham County grand jury indicted Hilton for malice murder (Count 1), felony murder (Count 2), aggravated assault (Count 3), and possession of a firearm during the commission of a felony (Count 4). Hilton filed a motion for competency evaluation and a special plea of incompetency to stand trial. Following an evaluation and a hearing, on July 10, 2018, the trial court found that Hilton was incompetent to stand trial and ordered another evaluation within 90 days. On December 7, 2018, January 30, 2019, and February 6, 2019, Hilton was re-evaluated. On April 2, 2019, the trial court held a hearing regarding Hilton's mental competency, and on December 5, 2019, the trial court entered an order finding Hilton competent to stand trial. Hilton was tried from July 12 to 15, 2021. The jury found Hilton guilty of all counts, and on July 21, 2021, the trial court entered a final judgment sentencing Hilton to life in prison for malice murder and five consecutive years in prison for the firearm offense. The remaining counts were merged or vacated by operation of law. On July 23, 2021, Hilton timely filed a motion for new trial, which he later amended on August 12 and August 19, 2024. A hearing on Hilton's amended motion for new trial was held on September 24, 2024. On October 9,

court erred when it refused to charge the jury on voluntary manslaughter. Even if the trial court erred in this way, any such error was harmless, so we affirm Hilton's convictions.

1. The evidence presented at Hilton's trial showed the following. On the morning of January 29, 2018, Tommy Allen was getting ready to leave for work. Carrying his keys and his lunch box, Allen walked outside his home and opened his car door. As Allen was getting into his car, Hilton walked out onto his front porch and fired four shots at Allen. A witness testified that he saw Allen slump and fall "partially out of the car." He died shortly thereafter.

Hilton asked a neighbor across the street to call 911. When police arrived, Hilton immediately confessed to the murder and told police that "the murder weapon" was "inside of his [clothes] dryer." Police conducted a sweep of Hilton's home and found a .38-caliber revolver that contained four expended casings in Hilton's dryer. Hilton was taken into custody and transported to the local police

2024, the trial court entered an order denying the motion. Hilton then filed a timely notice of appeal, and the case was docketed to the April 2025 term of this Court and submitted for a decision on the briefs.

department headquarters for questioning.

At trial, one of the investigators who interviewed Hilton testified as follows. Hilton told investigators that "he was in [a] dire situation" and that he "had exhausted all of his financial means." Because "his water was due to be cut off either that day or the next day," Hilton had been keeping "a large outdoor trashcan that was located in his bathtub" that "was filled to the top with water." With no "money coming in," "issues regarding [the denial of] disability [benefits]," and "bills [that] were mounting up," Hilton explained that he "felt that it was either suicide or homicide." "[T]he system [had] let him down," Hilton said. And if the government was unwilling to pay for his medical disability, Hilton said, "[it] might have to pay" for his incarceration.

When the investigator asked Hilton why he had killed Allen, Hilton stated, "My case, my situation was hopeless, and [Allen] had violated me in ways I can't prove beyond a reasonable shadow of a doubt. He was a threat to me[.]" The investigator testified that Hilton "didn't know exactly that [Allen] had done something to him

3

. . . [or] wronged him" and that Hilton "couldn't pinpoint or explain exactly what that was." When the investigator pressed Hilton to be specific about how Allen had "violated" him, Hilton said, "Well, now, I can't be specific, you know. Certain things you can't pin down beyond a shadow of a doubt." In response to a question about whether Allen had spoken to him that morning, Hilton answered, "[N]o, not before [I] started shooting." Hilton also stated, "Someone gets backed up in a corner, anything can happen. There's no excuse. You're responsible for what you do, no matter what, you know."

Hilton was tried for malice murder, felony murder, aggravated assault, and possession of a firearm during the commission of a felony. At the charge conference, Hilton's trial counsel requested a jury instruction on the lesser offense of voluntary manslaughter, arguing that Hilton's custodial statements to investigators showed that Hilton "felt that Mr. Allen was an ongoing and continuous threat to him." The trial court denied the requested instruction and found "[there was] no . . . evidence in front of the jury that there was any type of provocation, whatsoever, that would cause any kind of

4

sudden, irresistible passion" to warrant an instruction on voluntary manslaughter. Following the jury charge, counsel again objected to the trial court's refusal to give a charge on voluntary manslaughter.

2. Hilton argues that the trial court erred when it denied his request to charge the jury on voluntary manslaughter. This argument fails.

Voluntary manslaughter is the killing of another person, "under circumstances which would otherwise be murder," when the defendant "acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person." OCGA § 16-5-2 (a). When a defendant requests a jury instruction on voluntary manslaughter, "the trial court must give the instruction if there is slight evidence to support it[.]" *Anderson v. State*, 319 Ga. 56, 61 (901 SE2d 543) (2024) (citation and punctuation omitted).

Hilton contends "there was some evidence to support a jury charge on voluntary manslaughter" because after he shot Allen, Hilton told investigators that "Allen had 'violated' him and was a

5

threat to him." We are skeptical that Hilton's generic statement constituted "slight evidence" that Hilton was provoked into passion. However, even assuming without deciding that Hilton's statement constituted "slight evidence" of provocation, and that the trial court erred in failing to give a voluntary manslaughter instruction, we conclude that any such error was harmless.

A nonconstitutional error is harmless if the State shows that "it is highly probable that the error did not contribute to the verdict[.]" *Pounds v. State*, 320 Ga. 288, 294 (908 SE2d 631) (2024) (citation and punctuation omitted). Here, the State presented strong evidence that Hilton "unlawfully and with malice aforethought," OCGA § 16-5-1 (a), killed Allen because he "had exhausted all of his financial means" and believed "he was in [a] dire situation." The jury heard evidence that, prior to Hilton shooting Allen, Hilton thought his "situation was hopeless," that "the system [had] let him down," and that, because the government had denied him disability benefits, the government "might have to pay" for his incarceration. Aside from Hilton's vague assertions that Allen had

6

previously threatened and "violated" him, the jury heard no evidence from which it was likely to infer that Hilton "was provoked by a sudden, irresistible passion" before shooting Allen. *Merritt v. State*, 310 Ga. 433, 441 (851 SE2d 555) (2020). Because the evidence of Hilton's guilt was strong, and the evidence supporting a voluntary-manslaughter theory was weak, "it is highly probable that a jury instructed on voluntary manslaughter nonetheless would have rejected such a claim in the light of the trial evidence[.]" *Heyward v. State*, 308 Ga. 570, 573 (842 SE2d 293) (2020). Therefore, we conclude that the trial court's error, if any, in failing to give the jury an instruction on the lesser offense of voluntary manslaughter was harmless.

*Judgment affirmed. Peterson, CJ, and Bethel, Ellington, McMillian, LaGrua, Colvin, and Pinson, JJ, concur.*

7