302 Ga. 564
FINAL COPY

S17A0711. HODGES v. THE STATE.

BENHAM, Justice.

Appellant Davoris D. Hodges was found guilty of two counts of felony murder, armed robbery, and two counts of aggravated assault related to the shooting death of Khristal Wright, a Johnson County deputy sheriff.[1] He was found not guilty of malice murder.

Viewed in a light most favorable to the verdict, the evidence shows that prior to the date the victim was murdered, appellant suggested to his friend Kelvin Rozier that they rob the victim, but Rozier declined since he did not want to target a member of law enforcement. At about 9:00 p.m. on March

---

[1] The crimes occurred on March 22, 2013. On May 16, 2013, a Laurens County grand jury returned an indictment charging appellant with (Count 1) armed robbery; (Count 2) malice murder; (Count 3) felony murder (armed robbery); (Count 4) felony murder (aggravated assault); (Count 5 and Count 6) and two counts of aggravated assault. Appellant's first jury trial ended with a mistrial when the jury was unable to reach a verdict. A second jury trial was conducted December 8-12, 2014. The jury returned a verdict of not guilty on the Count 2 (malice murder), and a guilty verdict on all other counts. The trial court sentenced appellant to life without parole plus a term of 20 years to be served consecutive with the life sentence. Appellant filed a timely motion for new trial that was later amended. After conducting a hearing, the trial court denied appellant's motion for new trial by order dated May 6, 2016. Appellant filed a timely notice of appeal, and this case was docketed to the April 2017 term of court for a decision to be made on the briefs.

22, 2013, the victim's body was discovered by passing motorists on a road in Laurens County, just over the county line from Johnson County where appellant picked up the victim that same evening. Apparently, news of the victim's death spread around the community the night of her murder, and appellant's aunt, with whom he was living, knew that appellant had been with the victim that evening. Accordingly, at around 5:00 a.m., appellant's aunt telephoned the victim's aunt, handed appellant the telephone, and instructed him to tell the victim's aunt what he knew about the victim's whereabouts the previous evening. The victim's aunt testified appellant told her the victim had offered him money to drive her from Wrightsville to Dublin and he agreed to do so, but on the way to Dublin, the victim received a phone call and told appellant she no longer needed him to drive there because she had another ride. According to the victim's aunt, appellant told her he turned around, and at about 8:00 or 8:30 p.m., he let her out of his car and watched her get into a vehicle that appeared to be either an SUV or a truck. After speaking to the victim's aunt, appellant voluntarily appeared at the police department at about 5:30 a.m. to give his statement. The audio recording of appellant's first interview was played to the jury, in which appellant gave investigators an account similar to the one he gave the

2

victim's aunt. Additionally, appellant told investigators that he sold the victim some marijuana before agreeing to drive the victim to Dublin, and that he dropped the victim off at the home of one of the victim's friends, where he saw her get into a vehicle that appeared to be either a truck or an SUV with others he could not identify. During this first interview, appellant stated no other person was with him and the victim as they drove toward Dublin.

After an investigation into his cell phone records revealed his location was inconsistent with his statement, the authorities contacted appellant a couple of hours after he gave his first statement and asked him to return to the police headquarters for a second interview because his earlier story did not check out. The audio recording of this interview was also played to the jury, and it reflects that appellant changed his story and became upset and emotional when he eventually told the investigators that he had witnessed his friend's murder. After he was informed of his rights, he implicated Rozier and told the investigators that Rozier had flagged him down as he was driving to pick up the victim. According to appellant, once the victim was in the car with them, Rozier pulled out a gun and forced appellant and the victim to get out of the vehicle, forced appellant to go through the victim's pockets and take her money, and shot the victim two or three times.

3

Appellant acknowledged that the gun belonged to him, but explained that Rozier had it on the night in question because Rozier had wanted to buy it from him. According to appellant's statement, Rozier forced appellant to take him back to the place appellant picked him up and ordered appellant to discard the evidence. Appellant told the investigators that Rozier threatened to kill him and his family if he implicated Rozier in the crimes. Appellant directed law enforcement to a wooded area where a gun was recovered, and then to a separate location where shell casings were recovered. He also directed them to cash and other property belonging to the victim hidden at the home of his aunt where he was living as well as at other nearby locations. The authorities then charged appellant with the victim's murder.

Despite appellant's statements to the authorities on Rozier's involvement in the crimes, Rozier had an alibi for the night of the murder. In fact, cell phone records revealed that while the phones of appellant and the victim appeared to be at the same spot around the time of the murder, Rozier's phone appeared to be in Wrightsville, where he testified he was on the evening of the murder. At 8:49 p.m., Rozier texted appellant asking him where he was, and the two carried on a text message conversation between 9:42 p.m. and 9:45 p.m. At trial, appellant called a witness who was the

4

grandmother of one of appellant's friends.  She testified that on the night of the victim's murder, appellant came to her door and asked to see her grandson, but the grandson was not at home.  She testified that she saw two other people in the vehicle appellant was driving, and while she could not identify the other individuals, she believed they were male.  On the other hand, appellant told investigators that he and Rozier had been seen together that evening at a dumpster on high school property and he gave them the names of two witnesses who could confirm that he and Rozier were together.  When the investigators interviewed those witnesses they confirmed seeing appellant near the dumpster but said he was alone.

The medical examiner testified that the victim died from two gunshot wounds to her face fired from less than six inches away. Appellant's clothing tested positive for the presence of gunshot primer residue, whereas the test on clothing Rozier said he was wearing on the night of the murder was not conclusive.  Bullet casings and jackets recovered from the victim's body matched the gun to which appellant led the authorities, which belonged to appellant.

1. Although appellant does not challenge the sufficiency of the evidence to sustain the convictions, it is this Court's practice to conduct an examination of the record to determine the legal sufficiency of the evidence in murder cases. Having done so, we conclude the evidence adduced at trial and summarized above was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that appellant was guilty of the crimes of which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2. The State sought to introduce a compilation of text messages between Rozier and appellant on the night the victim was murdered. Rozier, who was a participant in the text conversation, testified and authenticated the document's contents. Evidence may be authenticated by the "[t]estimony of a witness with knowledge that a matter is what it is claimed to be." OCGA § 24-9-901 (b) (1). This rule applies to the authentication of text messages retrieved from cell phone records. See *Glispie v. State*, 335 Ga. App. 177, 184-185 (1) (b) (i) (779 SE2d 767) (2015), rev'd in part on other grounds, 300 Ga. 128 (793 SE2d 381) (2016), and vacated in part on other grounds on remand, 341 Ga. App. 817 (801 SE2d 910) (2017). The trial court did not err

6

by admitting into evidence this authenticated compilation of messages between appellant and the authenticating witness.

3. Appellant's primary defense is coercion, and since he did not testify at trial, the evidence of this defense consists of appellant's statements to police that were recorded and played to the jury. From the second recorded statement a reasonable juror could conclude that appellant stated he did not shoot the victim but that he was forced at gunpoint to gather the victim's property before Rozier allegedly shot her. Appellant's counsel made an oral request for a charge on coercion, but the trial court denied the request. Appellant's counsel renewed the request by raising an exception to the instructions after they were read to the jury, but the trial court again denied the request. Even assuming that the denial of this request for a coercion instruction was error, it was harmless.

Even if a trial court errs in failing to give a warranted instruction, such an error does not necessarily demand reversal. See *Hamm v. State*, 294 Ga. 791, 797 (2) (756 SE2d 507) (2014) (addressing the trial court's erroneous refusal to give an instruction regarding the need for corroboration of an accomplice's testimony). "A conviction in a criminal case will not be reversed when it is highly probable that an erroneous jury instruction did not

contribute to the verdict." (Citation and punctuation omitted.) Id. See also *Reddick v. State*, 301 Ga. 90, 92-93 (1) (799 SE2d 754) (2017) (addressing the trial court's alleged error in refusing to give a requested charge on involuntary manslaughter in a murder case). The failure to give a requested charge, even if authorized by the evidence, can be harmless error. See *Brown v. State*, 289 Ga. 259, 261 (2) (710 SE2d 751) (2011) (addressing the trial court's failure to give a requested charge on impeachment of a State's witness by prior conviction).

The evidence of appellant's guilt, as summarized above, was compelling. Among other things, cell phone records placed appellant at or near the location of the murder at the time it occurred, whereas phone records belied appellant's claim that Rozier was with appellant and the victim. Appellant was in possession of property taken from the victim, and led the authorities to the location of the murder weapon and shell casings. Appellant's clothing tested positive for the presence of gunshot primer residue, whereas Rozier's clothes did not. Appellant first told the victim's aunt, and then the authorities, a similar story about the victim's paying appellant to drive her to another town, but after commencing the trip, being told by the victim that she no longer needed the ride. After the investigators

told appellant his story did not add up, appellant changed it to relate the improbable account that, while on his way to pick up the victim, Rozier flagged him down, and when the victim entered the car, Rozier pulled a gun belonging to appellant on appellant and the victim and forced appellant to take the victim's property. Appellant also told investigators that instead of taking possession of the stolen property himself, however, Rozier forced appellant to take him back to the place he was picked up and left appellant with the property along with the responsibility to dispose of the murder weapon. Although a friend's grandmother testified she saw two other unidentifiable persons in appellant's vehicle the night of the murder, this evidence was inconsistent with appellant's version of events and, in any event, did not require the jury to accept appellant's statement that only Rozier was the perpetrator of the crimes and that appellant was coerced to act.

The jury heard appellant's statement regarding how the crimes occurred and was properly instructed, among other things, on the presumption of innocence, circumstantial evidence, credibility of witnesses, mere presence, the State's burden to prove every essential element of the charged crimes beyond a reasonable doubt, and the required element of intent. The jury was instructed:

A person is a party to a crime only if that person directly commits the crime, intentionally helps in the commission of the crime, intentionally advises, encourages, hires, counsels or procures another to commit the crime or intentionally causes some other person to commit the crime under such circumstances that the other person is not guilty of any crime either in fact or because of legal incapacity.

In this case, "we conclude it is highly probable that the trial court's refusal to charge on [coercion] did not contribute to the verdict, and we affirm appellant's conviction." (Citation and punctuation omitted.) *Reddick v. State*, supra, 301 Ga. at 93 (1). Assuming, without deciding, that the failure to give a charge on coercion was erroneous, it was harmless error which does not require a new trial. See *Duvall v. State*, 259 Ga. 801, 802 (4) (387 SE2d 880) (1990).

4. Appellant contends he is entitled to a new trial as a result of juror misconduct. One of the jurors testified at the motion for new trial hearing that, during the trial, and while at home, she looked up some words on the dictionary application of an electronic device. She could not remember the words, but testified that she was trying to understand some things on which the jury was attempting to make a decision. She testified, however, that her dictionary search had no impact upon her "as a juror." No evidence was presented that she shared the result of her dictionary search with other jurors.

10

Given these facts, appellant's reliance upon *Chambers v. State*[2] is misplaced. In *Chambers*, one of the jurors had conducted an on-line search relating to Georgia law on a subject that was relevant to the defendant's defense and shared the result of that search with other jurors during jury deliberations. The Court of Appeals concluded the appellant's motion for new trial should have been granted because the State did not overcome by proof beyond a reasonable doubt the presumption of prejudice that arose from the juror's misconduct in injecting extrajudicial information into the jury's deliberations. Id. at 518 (1). Here, no evidence was presented that the juror's conduct contributed to the conviction such that the verdict is inherently lacking in due process. See *Holcomb v. State*, 268 Ga. 100, 103 (2) (485 SE2d 192) (1997); *Bobo v. State*, 254 Ga. 146 (327 SE2d 208) (1985). We are satisfied that the juror's conduct was harmless beyond a reasonable doubt, and the trial court did not err in denying the motion for new trial on this ground.

5. Appellant mischaracterizes the juror excusal process the judge employed in this case as the grant of a blanket and indiscriminate excusal of those jurors who sought to be excused. Instead, the transcript demonstrates that after advising potential jurors of the legal qualifications necessary to

---

[2] 321 Ga. App. 512 (739 SE2d 513) (2013).

serve on a jury, the judge invited any who may have a problem meeting the qualifications to come forward to discuss the matter with him. Several potential jurors came forward, and their discussions with the judge appear in the record. The record reflects that some jurors were excused and others who requested excusal were not excused. Appellant fails to demonstrate any abuse of trial court discretion in the excusal of any jurors. See *Young v. State*, 290 Ga. 392, 394-395 (2) (721 SE2d 855) (2012).

6. This Court may resolve a sentencing error even if it was not raised below or in the appeal. See *Hulett v. State*, 296 Ga. 49, 54 (2) (766 SE2d 1) (2014). We note such a sentencing error in this case, and we vacate the sentence.

Appellant was charged with and found guilty of one count of aggravated assault with a deadly weapon (Count 6), and the guilty verdict for that charge was merged for purposes of sentencing into the felony murder conviction for armed robbery. Appellant was charged with and found guilty of another count of aggravated assault with a deadly weapon (Count 5). For this guilty verdict, appellant was sentenced to a term of 20 years to be served consecutive with the life without parole sentence for felony murder predicated upon armed robbery. Appellant's conviction for aggravated

12

assault with a deadly weapon as set forth in Count 5 also should have merged into his armed robbery conviction. See *Long v. State*, 287 Ga. 886, 889 (2) (700 SE2d 399) (2010). Instead, the trial court imposed a sentence of 20 years for the guilty verdict on this count. Accordingly, the sentence of an additional term of years for the guilty verdict for Count 5 is vacated.

Judgment affirmed in part and vacated in part. All the Justices concur.

Decided November 2, 2017 — Reconsideration denied November 14, 2017.

Murder. Laurens Superior Court. Before Judge Helton.

Wanda S. Jackson, for appellant.

L. Craig Fraser, District Attorney, Kelli M. Adams, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway

Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney

General, Scott O. Teague, Assistant Attorney General, for appellee.