303 Ga. 6
FINAL COPY

S17A1634. McCLAIN v. THE STATE.

BLACKWELL, Justice.

Aaron McClain was tried by a Newton County jury and convicted of murder and other crimes in connection with the shooting death of his wife, Betty Mulbah McClain, and the wounding of his 12-year-old stepdaughter, T.S.[1] McClain appeals, contending that the evidence is legally insufficient to sustain

---

[1] Throughout this opinion, we will refer to Aaron McClain as "McClain," to his wife as "Mulbah," and to his stepdaughter as "T.S."

Mulbah was killed (and T.S. was wounded) on April 1, 2014. On July 8, 2014, a Newton County grand jury indicted McClain, charging him with malice murder, felony murder, two counts of aggravated assault (an assault upon Mulbah and an assault upon T.S.), two counts of cruelty to children in the first degree, two counts of possession of a firearm during the commission of a felony, and three counts of cruelty to children in the third degree. McClain stood trial from February 2 to 4, 2015, and a jury found him guilty on all counts. The trial court sentenced McClain to imprisonment for life without parole for malice murder, a consecutive term of imprisonment for 20 years for aggravated assault against T.S., and consecutive terms of imprisonment for 5 years for both counts of firearm possession. The court also imposed concurrent sentences for cruelty to children in the first degree and two counts of cruelty to children in the third degree. The verdict as to felony murder was vacated by operation of law, and the trial court merged the remaining counts. See Malcolm v. State, 263 Ga. 369, 373 (5) (434 SE2d 479) (1993). McClain moved for a new trial on February 10, 2015, and he amended the motion on February 8, 2017. The trial court denied the motion on April 10, 2017. McClain filed a timely notice of appeal on April 17, 2017, and this case was docketed to the August 2017 term of this Court and submitted for a decision on the briefs.

his convictions, that the trial court erred when it failed to instruct the jury on the principle of accident and misfortune, and that the court erred when it admitted certain evidence at trial. After reviewing the record and briefs, we find no reversible error, and we affirm.

1.    Viewed in the light most favorable to the verdict, the evidence presented at trial shows as follows. McClain and Mulbah married in December 2013. Their relationship deteriorated, however, in the months that followed, beset by allegations that each of them had been unfaithful. During that time, Mulbah complained to a coworker about her marriage problems, and she went to the office of the district attorney to inquire about securing a temporary protective order against McClain. Also during that time, McClain purchased a High Point .380 pistol, ostensibly for protection. At some point, Mulbah told McClain that she was going to leave him, and he responded, "I will kill you." McClain also told Mulbah that he would kill her if he ever saw her with someone else.

On April 1, 2014, McClain arrived home from work around 5:30 in the afternoon. Shortly thereafter, Mulbah left the home to go shopping with T.S. and McClain's 3-year-old grandson, N.M. (T.S. and N.M. both lived with McClain

2

and Mulbah). According to T.S., when they returned from shopping, T.S. started upstairs, and Mulbah went towards the kitchen. As T.S. climbed the stairs, she heard McClain repeatedly ask Mulbah where they had been, "as if he didn't believe [that they] went to the store." T.S. then heard a "clashing" sound — as if someone were hitting a washing machine or dryer, she later explained. She immediately returned downstairs, where she saw Mulbah lying prone on the floor, next to the laundry room. Mulbah was saying "let me go" and "you are going to jail," and she told T.S. to call the police. T.S. confronted McClain and asked what happened and why he pushed Mulbah. McClain pulled out a gun and, when T.S. backed away from him, fired at her, striking her hand. T.S. grabbed a phone, ran (followed by N.M.) to the home of a neighbor, and called 911. Soon, T.S. heard McClain drive away, and she returned to her house, where she found Mulbah lying unresponsive on the floor.

When law enforcement and emergency response personnel arrived at the home, they found that T.S. had suffered a gunshot wound to the base of her thumb, but she nevertheless had a mostly calm demeanor. N.M. was not physically hurt, but he was crying, and his hands were covered in blood. An officer trained to interview children spoke with T.S., and she told the officer that

3

McClain shot her and that he pushed (or punched) and shot Mulbah. T.S. provided a description of McClain, as well as the car that he was driving. N.M. did not provide any details about the incident to the officer, but he told a DFACS investigator at the scene that "Mommy got killed by Daddy."

Officers issued a BOLO alert for McClain and his vehicle. McClain was apprehended later that night in South Carolina, where he was found asleep in his car, parked next to a motel. The arresting officers found a High Point .380 pistol inside the vehicle.

An autopsy revealed that Mulbah had been shot four times — once in the left side of her head (a little above and behind her left ear), once in the back of her head, and twice in the back of her torso. No stippling was found around any of the wounds, meaning that the pathologist could not determine from how far away the shots were fired. Three of the four shots would have been fatal. The pathologist could not say whether Mulbah was lying down or standing when she was shot, but the pathologist concluded that it was "extraordinarily unlikely" that any of her wounds were self-inflicted. According to the pathologist, the odds that Mulbah had shot herself — while not zero — were "incontestably small."

4

McClain testified in his own defense. According to McClain, he and Mulbah began having problems in January 2014 when Mulbah suspected that McClain was having an affair with her sister. Around 8:00 on the evening of April 1, he said, he was at home, preparing to leave for a second job, when Mulbah and the children arrived home from shopping. Mulbah looked angry and accused McClain of lying to her. As he was preparing some food, McClain claimed, he heard a gun being cocked, turned around, and saw Mulbah with a gun, near the laundry room with her back to him. McClain said that he then rushed toward Mulbah and grabbed her wrists from behind. He saw T.S. come into the kitchen and asked her to call the police, but she refused, seeing her mother in control of the gun. T.S. tried to pull on McClain's hand, but the gun discharged accidentally, he said, and T.S. grabbed a phone and ran from the house. McClain claimed that he did not know T.S. had been struck by the gunshot, and he continued to struggle with Mulbah, begging her to relinquish the gun. McClain testified that their struggle continued for about 10 minutes, but Mulbah retained control of the gun. At that point, he said, he twisted her hands behind her back, and the gun discharged several times. McClain insisted that he never touched the gun — it was Mulbah who squeezed the trigger and shot both

5

herself and T.S. According to McClain, he drove away (with no particular destination in mind) after the shooting because he panicked.

McClain contends that the evidence is legally insufficient to sustain his convictions because there were no eyewitnesses to Mulbah's shooting and the pathologist could not definitively rule out the possibility that she shot herself. This contention is without merit. Among other things, the State presented evidence that McClain and Mulbah's marriage was deteriorating to the point that he twice threatened to kill her, and she was looking into the possibility of a restraining order. T.S. testified that, when she saw McClain shortly before Mulbah was shot, he was the aggressor and had full control of the gun — he either punched or pushed Mulbah to the floor and then shot T.S. in the hand. This testimony was consistent with the statements that T.S. made to an officer on the evening of the killing. The pathologist testified that it was highly unlikely that *any* of Mulbah's wounds were self-inflicted. And McClain fled the scene immediately after the shooting, which the jury could have considered as an act reflecting consciousness of guilt. See Woolfolk v. State, 282 Ga. 139, 140 (2) & n.2 (644 SE2d 828) (2007).

6

Although McClain insisted at trial that Mulbah accidentally shot herself — four times, including once in the back of the head and twice in the back — his account of the shooting is hard to square with common sense and the testimony of the pathologist. The jury was free to disbelieve McClain's account and to credit the State's evidence instead. See Graham v. State, 301 Ga. 675, 677 (1) (804 SE2d 113) (2017) ("[I]t is the role of the jury to resolve conflicts in the evidence and to determine the credibility of witnesses, and the resolution of such conflicts adversely to the defendant does not render the evidence insufficient." (citation omitted)). The evidence presented at trial was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that McClain was guilty of the crimes of which he was convicted. See Jackson v. Virginia, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2. McClain also contends that the trial court erred when it denied his request to charge the jury on the principle of accident and misfortune. See OCGA § 16-2-2 ("A person shall not be found guilty of any crime committed by misfortune or accident where it satisfactorily appears there was no criminal scheme or undertaking, intention, or criminal negligence."). "To authorize a requested jury instruction, there need only be slight evidence supporting the

theory of the charge." Reddick v. State, 301 Ga. 90, 90 (1) (799 SE2d 754) (2017). But "the failure to give a requested charge which is authorized by the evidence can be harmless error." Id. (citation and punctuation omitted). And a jury-instruction error is harmless when "it is highly probable that [the error] did not contribute to the verdict." Hodges v. State, 302 Ga 564, 568 (3) (807 SE2d 856) (2017) (citation omitted); Brown v. State, 289 Ga. 259, 261 (3) (710 SE2d 751) (2011).

Here, it is highly probable that an accident-and-misfortune instruction would not have changed the outcome of the trial. To accept McClain's theory of accident, the jury would have had to believe his account of the shooting — that Mulbah accidentally pulled the trigger and shot herself while he was trying to wrest the gun away from her. It is undisputed, however, that the trial court properly instructed the jury on the elements of malice murder and the requisite malicious intent, an intent that is absolutely incompatible with McClain's theory of accident. When the jury found McClain guilty of malice murder, it necessarily must have discredited his account of the shooting. Thus, even if the trial court had given a charge on accident and misfortune, there is no reasonable probability that the verdict would have been different. See Sears v. State, 290

8

Ga. 1, 4 (3) (717 SE2d 453) (2011) ("The jury's conclusion that [defendant] acted with malice . . . necessarily means that it would have rejected any accident defense, which is premised on the claim that he acted without any criminal intent."); Hannah v. State, 278 Ga. 195, 197 (2) (599 SE2d 177) (2004) (trial court did not commit reversible error in refusing to charge on accident, in part because "the jury was fully charged on the State's burden to prove every element of the crime of murder, including intent," and "[a]s the jury believed [defendant] to be guilty of malice murder, it could not have believed [victim's] death to be the result of an act committed in the absence of criminal intent"). Accordingly, any error in the trial court's refusal to instruct the jury on accident was harmless and does not warrant a reversal.

3. Finally, McClain argues that the trial court erred when it allowed the State to introduce evidence that, on the date of Mulbah's death, McClain received an email notifying him that he had insufficient funds in his bank account. McClain contends that this evidence was irrelevant and served only to impugn his character. We disagree. "Decisions regarding relevance are committed to the sound discretion of the trial court." Smith v. State, 299 Ga. 424, 429 (2) (b) (788 SE2d 433) (2016). Under OCGA § 24–4–401, evidence

9

is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The standard for relevant evidence is a "liberal one," and such evidence is generally admissible even if it has only slight probative value. See Booth v. State, 301 Ga. 678, 683-684 (3) (804 SE2d 104) (2017); Carter v. State, 302 Ga. 200, 202 (2) (a) (805 SE2d 839) (2017). Here, the evidence consisted of a single automated email from Wells Fargo to McClain, stating that "your available balance in your Wells Fargo account . . . was insufficient to cover one or more of your checks (if your account allows check writing), Debit/Prepaid Card purchases, or other transactions." It was within the discretion of the trial court to conclude that this evidence was relevant to show that McClain was under some degree of financial stress and had some reason to be upset on the day of the killing.

Relevant evidence still may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice." OCGA § 24-4-403 ("Rule 403"). Although the insufficient-funds evidence may have had little probative value, its prejudicial effect was also minimal. Overdrawing a checking account is a common experience among innocent individuals and does little to

demean one's character. The prejudicial effect of this evidence, if any, was not "unfair" and certainly not strong enough to exclude this evidence under the narrow parameters of Rule 403. See Olds v. State, 299 Ga. 65, 70 (2) (786 SE2d 633) (2016) ("[T]he exclusion of evidence under Rule 403 is an extraordinary remedy which should be used only sparingly." (citation omitted)). Moreover, any error in admitting this evidence was harmless, given the minimal prejudicial effect of the evidence and the other strong evidence of McClain's guilt. See Smith, 299 Ga. at 432 (2) (d) (error in admitting irrelevant evidence was harmless because this evidence was not prejudicial and the properly-admitted evidence of defendant's guilt was overwhelming). For the foregoing reasons, we affirm.

Judgment affirmed. All the Justices concur.

Decided February 5, 2018.

Murder. Newton Superior Court. Before Judge Ott.

Teresa L. Doepke, Anthony S. Carter, for appellant.

Layla H. Zon, District Attorney, Binford G. Bramblett, Randal M. McGinley, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Elizabeth H. Brock, Assistant Attorney General, for appellee.