**SECOND DIVISION**
**MILLER, P. J.,**
**MERCIER, J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**February 1, 2021**

# In the Court of Appeals of Georgia

A20A1871. THE STATE v. MELLY.

MILLER, Presiding Judge.

This is the second appearance of this case before the Court after we decided that Ryan Melly's motion for a new trial was premature. The State again appeals from the trial court's grant of Melly's motion for a new trial based on juror misconduct, arguing that (1) the trial court abused its discretion in finding that extrinsic prejudicial information was brought to any juror's attention; and (2) the jury's exposure to any information was harmless. Having thoroughly reviewed the record, we conclude that Melly was not harmed by any extraneous information that was brought to the jury's attention. Accordingly, we reverse the trial court's order granting his motion for a new trial.

A grand jury issued a 13-count indictment against Melly relating to sexual acts Melly committed against various minors. After a trial in 2015, a jury found Melly guilty of aggravated sodomy (OCGA § 16-6-2), aggravated child molestation (OCGA § 16-6-4), aggravated sexual battery (OCGA § 16-6-22.2), child molestation (OCGA § 16-6-4), enticing a child for indecent purposes (OCGA § 16-6-5), and cruelty to children in the first degree (OCGA § 16-5-70). During its preliminary instructions, the trial court had admonished the jury not to conduct research on the case. After the trial, Melly filed a motion to vacate the jury's verdict or, in the alternative, a motion for a mistrial. Melly argued that, prior to sentencing, one of the jurors contacted the trial judge's office and revealed information "about potential juror misconduct."

The trial court held a hearing on Melly's motion, which it construed as a motion for a new trial. The trial court then granted the motion due to a screenshot that one of the jurors ("Juror B") possessed during deliberations, which contained "statistics regarding the characteristics of child molesters." After the State appealed from that decision, this Court determined, in an unpublished opinion, that Melly's motion for a new trial was premature and void because the trial court had not entered its judgment on the jury's verdict. We therefore vacated the order granting the motion and remanded the case for further proceedings. When the case returned to the trial

2

court, Melly was sentenced to life imprisonment. Melly filed a "motion for out-of-time motion for new trial" and later requested that he be granted a new trial. After another hearing, the trial court again vacated Melly's convictions and granted his motion. The trial court reasoned that (1) Juror B's research, which was conducted at home and brought into the jury room, constituted extraneous prejudicial information for purposes of OCGA § 24-6-606 (b); and (2) the State failed to overcome the presumption that Melly was injured by this occurrence. The State then appealed.

1. In two related enumerations of error, the State contends that (1) the trial court abused its discretion in finding that extrinsic prejudicial information was brought to any juror's attention; and (2) the exposure to any information was harmless. Having reviewed the record, we conclude that Melly was not harmed by any extraneous information brought to the jury's attention.

The abuse-of-discretion standard of review applies to a trial court's decision on a motion for new trial based on improper juror conduct. *Dorsey v. State*, 279 Ga. 534, 544 (5) (615 SE2d 512) (2005). Additionally, because "the trial court was sitting as a trier of fact in determining what transpired during jury deliberations, we defer to its resolution of . . . conflicts or inconsistencies in the evidence presented." *Burney v. State*, 309 Ga. 273, 293 (5), n.16 (845 SE2d 625) (2020).

3

"Upon an inquiry into the validity of a verdict or indictment, . . . a juror may testify on the question of whether extraneous prejudicial information was improperly brought to the juror's attention [or] whether any outside influence was improperly brought to bear upon any juror[.]" OCGA § 24-6-606 (b). This rule "is borrowed from the Federal Rules of Evidence, so we are guided by decisions of the federal appeals courts, especially the Eleventh Circuit, in construing and applying it." *Beck v. State*, __ Ga. __,__ (1) (__SE2d__) (2020), Case No. S20A1152, slip op. at *3 (2020). On the question of what constitutes "extraneous prejudicial information," "[i]nformation is deemed extraneous if it derives from a source external to the jury." (Citation omitted.) Id. And "[u]nder federal law, any evidence that does not come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel is presumptively prejudicial." (Punctuation omitted.) *McNair v. Campbell*, 416 F3d 1291, 1307 (III) (B) (2) (11th Cir. 2005). "In order to give rise to this presumption, a defendant need only demonstrate that jurors had contact with extrinsic evidence." Id. These federal principles are congruent with precedent from the Supreme Court of Georgia, which has held that, "[o]n direct appeal, a rebuttable presumption of prejudice arises whenever a jury is exposed to external information in contravention

4

of a trial court's instructions[.]" (Citation, punctuation, and emphasis omitted.) *Greer v. Thompson*, 281 Ga. 419, 422 (637 SE2d 698) (2006).

Crucially, however, "a jury verdict will not be upset solely because of [irregular juror] conduct, unless the conduct is so prejudicial that the verdict must be deemed inherently lacking in due process." (Citation and punctuation omitted.) *Simmons v. State*, 291 Ga. 705, 707 (4) (733 SE2d 280) (2012). To this end, even where a presumption of prejudice arises due to irregular juror misconduct, a new trial is not warranted if the State meets its "burden of establishing beyond a reasonable doubt that no harm occurred." (Citation and punctuation omitted.) *Burney*, supra, 309 Ga. at 293 (5).[1]

We turn now to the jurors' testimony on the matter. At the initial 2016 hearing on Melly's motion, four jurors testified. Juror A explained as follows:

> Friday morning when we came in and we started talking, one of the
> ladies across the table from me pulled out her phone and wanted to give

___

[1] A similar rule is embodied in federal law. *United States v. Whatley*, 719 F3d 1206, 1219 (III) (C) (11th Cir. 2013) (where a defendant makes a colorable showing that the jury was exposed to extraneous information, "prejudice to the defendant is presumed and the burden shifts to the government to show that the jurors' consideration of extrinsic evidence was harmless to the defendant.").

us statistics on child molesters. And I pointed to her, looked at . . . the foreperson, and asked him if we were allowed to be doing this. And he said, I don't think so. She put her phone down and said, well, it's here if you want it.

Juror A testified that none of the jurors looked at the phone or asked about the information contained on the phone and that Juror B turned off her phone, set it down, and did not "give any information or anything like that." Juror B testified that on the day after deliberations commenced, she had a screenshot on her cell phone which contained a list of "characteristics . . . of sexual abusers." She testified that she attained the screenshot as "authority." Juror B testified that Juror A did not look at her phone, nor did any other juror. She further explained that she previously knew the information that was contained in the screenshot and that she did not use the Internet during deliberations.

The trial court also heard testimony from Juror C that "[t]here was a lady that pulled her phone out and said, according to my phone on this and such. And [the foreperson] said, wait, wait. We can't use any of that. And that's as far as it went." Juror C confirmed that she did not see what information was contained on the phone; she did not recall what the information pertained to; and the foreperson "put an end to it before any information really got out." Lastly, the foreperson testified that he did

6

not recall any juror speaking about "outside" information concerning the case; that he did not see a juror attempting to use information from a phone; and that he did not remember telling any juror to stop trying to use information from a phone. He stated that "there could have been something that somebody said," but he could not remember any specific instance of someone attempting to discuss extrinsic information, and that if a juror had tried to do so, he would have told the juror that such an action was not allowed.

At another hearing in 2019, Juror B further explained that she knew of the information contained in the screenshot partly based on her yearly training and experience as a teacher and partly based on general knowledge. The attorneys for both parties also entered into a stipulation regarding the eight additional jurors, which provided that these jurors did not see any information on Juror B's phone and did not hear Juror B share any information regarding the contents on her phone.

Given this evidence, the record supports the trial court's findings that (1) Juror B impermissibly gleaned information from an extraneous source in contravention of the trial court's instructions; (2) Juror B brought the screenshot of her research into the deliberation room and attempted to show it; and (3) Juror A was aware that Juror B had collected statistics about child molesters for the jury's consideration.

But even assuming that these facts show that extraneous prejudicial information was improperly "brought to the attention" of one or more jurors, Melly is not automatically entitled to a new trial on this basis. We must now assess the case for the harmfulness of the error. And given the record before us, we find that the State met its burden of proving that Juror B's conduct was harmless beyond a reasonable doubt. Guided by case law, we are persuaded that the circumstances before us do not compel upsetting the jury's verdict.

In *O'Donnell v. Smith*, 294 Ga. 307 (751 SE2d 324) (2013), a habeas case, a juror searched the Internet for information on the defendant's case, as well as trial counsel and his other cases, and the record was silent as to whether he shared his research with the other jurors. Id. at 310 (1). Our Supreme Court held that the research was "not the kind of conduct that is so prejudicial as to violate appellee's due process rights especially where . . . there [was] no showing that [the juror] *communicated any of what he discovered* on the Internet with his fellow jurors and no showing that the information obtained otherwise affected the verdict." (Emphasis supplied.) Id. The Supreme Court of Georgia arrived at a similar conclusion in *Hodges v. State*, 302 Ga. 564 (807 SE2d 856) (2017). In that case, a juror searched for the definitions of words used at trial. Id. at 568 (4). The juror testified that her

8

dictionary search had no impact upon her as a juror, and the record failed to show that she shared "*the result* of her dictionary search with other jurors." (Emphasis supplied.) Id. The Court held that "no evidence was presented that the juror's conduct contributed to the conviction such that the verdict [was] inherently lacking in due process" and that the juror's conduct was "harmless beyond a reasonable doubt." Id. at 569 (4). See also *Cooke v. State*, 356 Ga. App. 679, 681 (1) (848 SE2d 693) (2020) (juror's actions were harmless beyond a reasonable doubt where she testified that the information she learned from a telephone call did not influence her decision, she did not share the information with the other jurors, and the other jurors confirmed that the information was not shared with them).

As the trial court found in this case, none of the jurors other than Juror B saw the contents of the screenshot or discussed its contents with Juror B. The evidence that Juror B told Juror A that she possessed a screenshot of statistics related to child molesters merely shows that Juror A knew of the general nature of the information Juror B possessed, as opposed to the specifics of its substance.[2] Pertinently, there was

_____

[2] In its order, the trial court suggested that the foreperson also knew that Juror B possessed a screenshot containing statistics related to child molesters. Because our analysis regarding Juror A would naturally extend to the foreperson (and to Juror C), our conclusion remains the same.

no discussion of what the statistics were, their significance, or how they related to the evidence in the case, if at all.[3] Further, we find untenable the trial court's suggestion that the presumption of prejudice remained because Juror B "was attempting to influence the deliberations" and because she represented to the jurors that she possessed statistics "to support a particular position." Although Juror B may have *intended* to use the screenshot as authority for a particular viewpoint, the jurors never actually discussed the statistics in connection with either Melly or the evidence presented at trial. Additionally, Juror B never stated to any juror that the contents of the screenshot supported or lent credence to any stance that she had taken during the deliberations or that the contents pertained to anything that the jurors had discussed.[4] Lastly, Juror B unequivocally testified that she had prior knowledge of the information contained in the screenshot, and nothing in the record evinces that her

---

[3] The State made similar arguments before the trial court.

[4] Melly states in his appellee brief that Juror B "verbally communicate[d] to Juror [A] the fact that she, Juror [B], had expert authority in the form of CDC Child Molester Statistics on her cell phone which proved the claims about child molesters that Juror [B] had made to Juror [A] on the prior day of jury deliberations. . . ." This assertion is not supported by the record; there was no testimony that Juror B *told* any other juror that she possessed "expert authority" or research which proved any previous claim that she had made during the deliberations.

decision-making was influenced by the information. When we examine all these circumstances, we cannot find a reasonable probability that Juror B's conduct contributed to the conviction such that the verdict is inherently lacking in due process. Compare *Blake v. State*, 304 Ga. 747, 751 (2) (822 SE2d 207) (2018) (mistrial warranted where juror consulted with a police detective about the meanings of malice murder and felony murder, and she "shared that information with the rest of the jury, which discussed it during deliberations"); *Hammock v. State*, 277 Ga. 612, 614 (2) (592 SE2d 415) (2004) (reasonable probability existed that juror's conduct contributed to the defendant's conviction where the juror measured the dimensions of her own bed to supplement the testimony of the state's expert witness, she "conveyed the results of her test to the other jurors," and the jury unanimously found the defendant guilty after hearing this extra-judicial information).

Because Melly was not harmed by any extraneous information brought to the jury's attention, Melly was not entitled to a new trial, and we reverse the trial court's grant of Melly's motion for a new trial.

*Judgment reversed. Mercier, J., and Senior Appellate Judge Herbert E. Phipps, concur.*