**FOURTH DIVISION**
**DILLARD, P. J.,**
**MILLER, P. J., and MERCIER, J.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**January 31, 2022**

# In the Court of Appeals of Georgia

A21A1724. IN THE INTEREST OF A. A., A CHILD.

DILLARD, Presiding Judge.

A. A., a juvenile, was adjudicated delinquent on a count of reckless conduct, a misdemeanor.[1] She now appeals from this adjudication, arguing that (1) the trial court erred in its interpretation of reckless conduct under OCGA § 16-5-60, (2) the trial court erred in permitting the State to admit text messages without sufficient authentication, and (3) the evidence is insufficient to sustain her adjudication of delinquency. For the reasons set forth *infra*, we affirm.

The record shows that on January 6, 2021, an investigator with the Coweta County Sheriff's Department responded to a residence following a juvenile

---

[1] The trial court concluded there was insufficient evidence to adjudicate A. A. as delinquent on a count of distributing obscene material.

complaint. A. A. lived at the residence with her legal guardian, who reported finding a cell phone containing a video depicting A. A. inserting a toothbrush into her vagina in the bathroom where the guardian's two biological children kept their toothbrushes. And just a week or so before this incident, the guardian took A. A. to receive a second treatment for gonorrhea, a sexually transmitted illness.

Thereafter, the investigator spoke with A. A. about the video, and she admitted to inserting at least one of the children's toothbrushes into her vagina, that she was the person on the video, and that she did so because she found the children "annoying." A petition for a finding of delinquency was issued in the aftermath of these admissions, and A. A. was adjudicated as such for reckless conduct. This appeal follows.

1. For starters, A. A. argues the trial court erred in its interpretation of the reckless-conduct statute, OCGA § 16-5-60. We disagree.

A. A. contends the statute cannot be read as "relating to the negligent or purposeful spread of any disease both because of the content of the statute as a whole and because of the logical implication of interpreting the statute in that way." In particular, A. A. notes that the relevant statute subsequently mentions only HIV and no other communicable diseases. She also discusses at length the General Assembly's

2

enactments—and decisions not to enact—various rules or prohibitions in response to the ongoing COVID-19 pandemic as evidence that the legislature does not intend to criminalize the negligent spread of all communicable diseases. We are not persuaded by these arguments.

To begin with, we need not address whether A. A. correctly asserts that the trial court erred in its interpretation that OCGA § 16-5-60 (b) expresses an "intent" by the General Assembly to apply *only* to those "infectious diseases with serious public health implications that spread through contact with an infected person's blood, saliva, mucus or other bodily fluids." Indeed, whether the trial court answered that question correctly has no bearing on A. A.'s argument that OCGA § 16-5-60 (b) does not apply to *any* communicable disease.

Moreover, we likewise need not address A. A.'s argument that criminalizing the negligent spread of communicable diseases under OCGA § 16-5-60 (b) is overly broad in light of the COVID-19 pandemic, as the facts of this case do not concern that disease or the ways in which it is transmitted. To put it plainly, what the General Assembly has or has not done in light of the COVID-19 pandemic, or whatever the numerous legislators' personal interpretations of OCGA § 16-5-60 (b) may be, is ultimately of no consequence. This Court's only concern is with the plain meaning

3

of the statute, which is rightfully our *sole* focus in determining the General

Assembly's "intent."[2]

---

[2] *See Beasley v. Ga. Dep't of Corr.*, 360 Ga. App. 33, 41 (3) (a) (861 SE2d 106) (2021) ("Appellate courts must discern the 'intent' of the legislature through the words contained in enacted statutes, and nothing more."); *Monumedia II, LLC v. Dep't of Transp.*, 343 Ga. App. 49, 55 (1) (806 SE2d 215) (2017) ("[W]e are charged with interpreting the law in accordance with the original and/or plain meaning of the text at issue (and all that the text fairly implies), as well as with faithfully following the precedents established by higher courts. And importantly, both our constitutional system of government and the law of this State prohibit the judicial branch from amending a statute by interpreting its language so as to change the otherwise plain and unambiguous provisions." (footnotes & punctuation omitted)); *Merritt v. State*, 286 Ga. 650, 656 (690 SE2d 835) (2010) (Nahmias, J., concurring specially) ("[W]hen judges start discussing not the meaning of the statutes the legislature actually enacted, as determined from the text of those laws, but rather the unexpressed 'spirit' or 'reason' of the legislation, and the need to make sure the law does not cause 'unreasonable consequences,' [thus venturing] into dangerously undemocratic, unfair, and impractical territory."); *Bellsouth Telecomm., LLC v. Cobb Cnty.*, 342 Ga. App. 323, 335 n.16 (802 SE2d 686) (2017) (Dillard, J., concurring fully and specially) ("In my view, our appellate courts should stop referencing altogether the ethereal fiction of 'legislative intent' in the context of statutory interpretation. A judge should not care about what any legislator intended but did not expressly provide for in the statutory text."), *overruled on other grounds by BellSouth Telecomm., LLC v. Cobb Cnty.*, 305 Ga. 144 (824 SE2d 233) (2019); *see also Richardson v. State*, 276 Ga. 639, 640 (1) (581 SE2d 528) (2003) ("Courts of last resort must frequently construe the language of a statute, but such courts may not substitute by judicial interpretation language of their own for the clear, unambiguous language of the statute, so as to change the meaning." (punctuation omitted)); *In re Whittle*, 339 Ga. App. 83, 89 (1) (793 SE2d 123) (2016) (holding that if an appellant's policy arguments are ultimately to prevail, they should be made to our General Assembly, not an appellate court).

To that end, in interpreting any statute, we necessarily begin our analysis with "familiar and binding canons of construction."[3] And in considering the meaning of a statute, our charge is to "presume that the General Assembly meant what it said and said what it meant."[4] As a result, we must afford the statutory text its plain and ordinary meaning,[5] consider the text contextually,[6] read the text "in its most natural

---

[3] *Holcomb v. Long*, 329 Ga. App. 515, 517 (1) (765 SE2d 687) (2014).

[4] *Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013) (citation & punctuation omitted); *accord Arby's Restaurant Group, Inc. v. McRae*, 292 Ga. 243, 245 (1), 734 SE2d 55 (2012); *Martinez v. State*, 325 Ga. App. 267, 273 (2) (750 SE2d 504) (2013).

[5] *Deal*, 294 Ga. at 172 (1) (a); *see State v. Able*, 321 Ga. App. 632, 636 (742 SE2d 149) (2013) ("A judge is charged with interpreting the law in accordance with the original and/or plain meaning of the text at issue (and all that the text fairly implies)[.]"); *Singletary v. State*, 310 Ga. App. 570, 572 (713 SE2d 698) (2011) ("In construing these statutes, we apply the fundamental rules of statutory construction that require us to construe the statutes according to their terms, [and] to give words their plain and ordinary meaning[.]" (citation & punctuation omitted)).

[6] *See Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 10 (II) (B) (133 SCt 2247, 186 LE2d 239) (2013) (Scalia, J.) ("Words that can have more than one meaning are given content, however, by their surroundings." (citation & punctuation omitted)); *Deal*, 294 Ga. at 172 (1) (a) ("[W]e must view the statutory text in the context in which it appears[.]"); *Hendry v. Hendry*, 292 Ga. 1, 3 (1) (734 SE2d 46) (2012) (same); *In the Interest of L. T.*, 325 Ga. App. 590, 592 (754 SE2d 380) (2014) (same); *Martinez*, 325 Ga. App. at 273 (2) (same); *see also* OCGA § 1-3-1 (b) ("In all interpretations of statutes, the ordinary signification shall be applied to all words . . . ."); *Scherr v. Marriott Int'l, Inc.*, 703 F3d 1069, 1077 (II) (C) (2) (7th Cir. 2013) (Manion, J.) ("In statutory construction cases, we begin with the language of the

5

and reasonable way, as an ordinary speaker of the English language would,"[7] and seek to "avoid a construction that makes some language mere surplusage."[8] And when the language of a statute is plain and susceptible of only one natural and reasonable construction, "courts must construe the statute accordingly."[9]

Turning to the text at issue, OCGA § 16-5-60 (b) provides as follows:

> A person who causes bodily harm to or endangers the bodily safety of another person by consciously disregarding a substantial and unjustifiable risk that his act or omission will cause harm or endanger the safety of the other person and the disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation is guilty of a misdemeanor.

---

statute itself and the specific context in which that language is used." (citation & punctuation omitted)).

[7] *Deal*, 294 Ga. at 172-73 (1) (a); *accord Luangkhot v. State*, 292 Ga. 423, 424 (1) (736 SE2d 397) (2013), *superseded by statute on other grounds as recognized by Estrada-Nava v. State*, 332 Ga. App. 133 (771 SE2d 28) (2015); *Martinez*, 325 Ga. App. at 273 (2).

[8] *In the Interest of L. T.*, 325 Ga. App. at 592 (citation & punctuation omitted); *accord Ga. Transmission Corp. v. Worley*, 312 Ga. App. 855, 856 (720 SE2d 305) (2011); *Singletary*, 310 Ga. App. at 572.

[9] *Luangkhot*, 292 Ga. at 424 (1) (punctuation omitted); *see Deal*, 294 Ga. at 173 (1) (a) ("[I]f the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an end." (punctuation omitted)); *Martinez*, 325 Ga. App. at 273 (2) (same).

So, while A. A. is correct that OCGA § 16-5-60 goes on to discuss HIV specifically *in other subsections of the statute*, it does so in terms of criminalizing instances in which a person who is knowingly infected with HIV does not disclose this information before engaging in sexual intercourse or sexual acts with another, sharing hypodermic needles or syringes, performing sexual acts for money, soliciting or submitting to sodomy for money, or donating blood or other bodily fluid.[10] The statute further goes on to criminalize the knowing attempt to infect a peace officer or correctional officer with HIV or hepatitis.[11] But none of this *additional* statutory language suggests the General Assembly did *not* intend for OCGA § 16-5-60 (b) to encompass other communicable diseases.

Notably, unlike OCGA § 16-5-60 (b), these latter provisions constitute *felonies*.[12] And all OCGA § 16-5-60 (b) requires, by its plain terms, is proof that a person "consciously disregarded a substantial and unjustifiable risk that his act would

---

[10] *See* OCGA § 16-5-60 (c) (1)-(5).

[11] *See* OCGA § 16-5-60 (d) (1)-(2). A. A. does not mention the statute's inclusion of hepatitis.

[12] *Compare* OCGA § 16-5-60 (b) (providing that a violation is a misdemeanor), *with* OCGA § 16-5-60 (c) (providing that a violation is a felony); OCGA § 16-5-60 (d) (same).

7

harm [another person] or endanger [the other person's] safety."[13] Thus, the trial court did not err in concluding that OCGA § 16-5-60 (b) could apply to the *potential* transmission of gonorrhea which, as it happens, the General Assembly has elsewhere "declared to be contagious, infectious, communicable, and dangerous to the public health."[14]

---

[13] *Burk v. State*, 223 Ga. App. 530, 531 (1) (478 SE2d 416) (1996) (punctuation omitted); *see Ward v. State*, 252 Ga. 85, 88 (1) (311 SE2d 449) (1984) ("Reckless conduct involves consciously disregarding a substantial and unjustifiable risk that the act will cause harm or endanger the safety of another."); *see also In the Interest of M. L.*, 316 Ga. App. 413, 414 (729 SE2d 548) (2012) ("The crime of reckless conduct is, in essence, an instance of criminal negligence, rather than an intentional act, which causes bodily harm to or endangers the bodily safety of another. OCGA § 16-2-1 (b) defines 'criminal negligence' as 'an act or failure to act which demonstrates a willful, wanton, or reckless disregard for the safety of others who might reasonably be expected to be injured thereby.'" (punctuation & citation omitted)). To the extent A. A. suggests OCGA § 16-5-60 (b) does not even apply to HIV, that issue has already been decided adversely to her position. *See Burk*, 223 Ga. App. at 531 (1) ("The fact that [the defendant] did not engage in any act proscribed by OCGA § 16-5-60 (c) does not insulate him from criminal liability under subsection (b) for attempting to transmit the AIDS virus via saliva.").

[14] OCGA § 31-17-1; *see* OCGA § 42-1-7 (a) ("For the purposes of this Code section, the term 'infectious or communicable disease' shall include infectious hepatitis, tuberculosis, influenza, measles, chicken pox, meningitis, HIV as defined in Code Section 31-22-9.1, or any sexually transmitted disease enumerated in Code Section 31-17-1."); OCGA § 42-1-7 (b) ("Notwithstanding any other provision of law, any state or county correctional institution, municipal or county detention facility, or any facility as defined in Code Section 37-3-1 shall notify any state or local law enforcement agency required to transport an inmate or patient if such inmate or patient has been diagnosed as having an infectious or communicable disease.").

2. Next, A. A. contends the trial court erred by admitting text messages that were unsupported by proper authentication. Again, we disagree.

At the bench trial, the State introduced screen shots of text messages between A. A. and another individual. And while those messages do not show the time or date on which they were sent and received, A. A. mentions within them that she is at "a foster home called angels house" and her guardian found out about "the toothbrush thing." Additionally, A. A.'s guardian testified that the text messages were found on a phone A. A. used, which was the same phone that stored the toothbrush video. And in the text messages, A. A. disclosed to the other individual that her guardian had "found out about the toothbrush thing but [A. A.] had washed them off and everything after."

A. A. objected to the admission of the text messages on the basis that they lacked authentication, but the trial court overruled this objection, finding the State sufficiently authenticated them. Nevertheless, A. A. argues on appeal that her guardian's testimony regarding the text messages was insufficient to authenticate them because she was not the recipient of those messages. In doing so, A. A. contrasts this case from those in which texts were authenticated by a participant in the text

9

exchange,[15] when a phone was confiscated from the person who sent the text messages,[16] or when cell-phone records demonstrated the subscriber's identity.[17]

In considering A. A.'s argument, our analysis necessarily begins with OCGA § 24-9-901 (a), which provides that:

> The requirement of authentication or identification as a condition precedent to admissibility shall be satisfied by evidence sufficient to

---

[15] *See, e.g.*, *Hodges v. State*, 302 Ga. 564, 566 (2) (807 SE2d 856) (2017) ("[The witness], who was a participant in the text conversation, testified and authenticated the document's contents. . . . The trial court did not err by admitting into evidence this authenticated compilation of messages between appellant and the authenticating witness.").

[16] *See, e.g.*, *Johnson v. State*, 348 Ga. App. 667, 676 (1) (b) (824 SE2d 561) (2019) ("Contrary to [appellant's] arguments, the State presented ample evidence to authenticate the outgoing text messages found on her phone and to establish that she authored those messages. Indeed, an investigator with the Hall County Sheriff's Office testified that he executed a search warrant at [her and her fiancé's] residence, and he seized both of their cell phones.").

[17] *See Nicholson v. State*, 307 Ga. 466, 475 (5) (837 SE2d 362) (2019) (holding that messages were sufficiently authenticated when "[t]he State used a search warrant to obtain the records from AT&T, which also provided a verification of authenticity"); *Johnson v. State*, 347 Ga. App. 831, 841-42 (2) (a) (821 SE2d 76) (2018) (holding that testimony by mobile-service-provider's records custodian sufficiently authenticated text messages).

support a finding that the matter in question is what its proponent claims.[18]

And OCGA § 24-9-901 (b) describes, but does not limit, examples of means by which authentication or identification may be accomplished, including "[t]estimony of a witness with knowledge that a matter is what it is claimed to be" and "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances."[19] Indeed, there are "no special rules under Georgia

---

[18] As explained by our Supreme Court, "[m]any provisions of . . . [our] Evidence Code were borrowed from the Federal Rules of Evidence, and when we consider the meaning of these provisions, we look to decisions of the federal appellate courts construing and applying the Federal Rules, especially the decisions of the United States Supreme Court and the Eleventh Circuit." *Olds v. State*, 299 Ga. 65, 69 (2) (786 SE2d 633 (2016).

[19] OCGA § 24-9-901 (b) (1), (4); *see Nicholson*, 307 Ga. at 475 (5) ("Documents from electronic sources are subject to the same rules of authentication as other more traditional documentary evidence and may be authenticated through circumstantial evidence," which may include the "appearance, contents, substance, internal patterns, or other distinctive characteristics of the documents, taken in conjunction with circumstances." (citation & punctuation omitted)); *Hodges v. State*, 302 Ga. 564, 566 (2) (807 SE2d 856) (2017) (explaining that OCGA § 24-9-901 (b) (1) "applies to the authentication of text messages retrieved from cell phone records"); *see also* see also Ronald L. Carlson & Michael Scott Carlson, CARLSON ON EVIDENCE, p. 654 (6th ed. 2018) (noting that courts consider a host of factors in determining whether there is evidence sufficient to authenticate text messages under OCGA § 24-9-901 (b), such as the device in question being found on the defendant and the content of the relevant text messages).

law governing the authentication of electronic documents or communications."[20] As a result, after the party seeking to authenticate evidence "presents a prima facie case that the evidence is what it purports to be, the evidence is properly admitted, leaving the ultimate question of authenticity to be decided by the jury."[21]

That said, we acknowledge that every form of electronic communication "can be 'spoofed,' 'hacked,' or 'forged,' but this does not and cannot mean that courts should reject any and all such communications."[22] Indeed, the vast majority of these electronic communications are "just as they appear to be—quite authentic."[23] And here, we must decide whether the trial court abused its discretion in finding the

---

[20] *Johnson v. State*, 348 Ga. App. 667, 675 (1) (824 SE2d 561) (2019); *accord Branch v. State*, 361 Ga. App. 86, 91 (5) (863 SE2d 349) (2021); *Koules v. SP5 Atl. Retail Ventures, LLC*, 330 Ga. App. 282, 288 (2) n.7 (767 SE2d 40 (2014).

[21] *Nicholson*, 307 Ga. at 475 (5); *accord Branch*, 361 Ga. App. at 92 (5); *Koules*, 330 Ga. App. at 288 (2) n.7; *see also United States v. Lanzon*, 639 F3d 1293, 1301 (II) (C) (11th Cir. 2011) ("The proponent need only present enough evidence to make out a prima facie case that the proffered evidence is what it purports to be." (punctuation omitted)).

[22] *Johnson*, 348 Ga. App. at 677 (1) (punctuation omitted); *accord Pierce v. State*, 302 Ga. 389, 396 (2) (a) (807 SE2d 425) (2017); Paul S. Milich, GA. RULES OF EVIDENCE, § 7:6 (2018).

[23] *Johnson*, 348 Ga. App. at 677-78 (1) (punctuation omitted); *accord Pierce*, 302 Ga. at 396 (2) (a).

12

relevant text messages authentic and admitting them into evidence.[24] We conclude that it did not.

In this case, the State presented sufficient evidence to authenticate the text messages from the phone when the content of those messages—taken together with the fact that they were on the same phone A. A. *admittedly* used to film herself inserting a toothbrush into her vagina—all supported the guardian's testimony that A. A. was the one who used that particular cell phone.[25]

---

[24] *See Burgess v. State*, 292 Ga. 821, 823 (4) (742 SE2d 464) (2013) ("[T]he admission of evidence is reviewed for an abuse of discretion.").

[25] *See Pierce*, 302 Ga. at 396 (2) (a) (holding that text messages sent by the defendant were properly authenticated when an investigating officer testified that photos he took of the phone's screen were a fair and accurate representation of the messages that appeared on the phone to which the messages were sent); *Cotton v. State*, 297 Ga. 257, 259-60 (3) (773 SE2d 242) (2015) (holding that Facebook messages were authenticated when "[the victim's] mother testified that she knew [defendant] went by the name 'Bucky Raw' because she saw videos that he had posted—and in which he appeared—on YouTube using that alias, because she saw that [defendant's] friends and family were Facebook 'friends' with 'Bucky Raw,' and because she was able to discern [defendant's] identity through the conversations she had with him on the accounts that she and her friend had set up"); *see also United States v. Barnes*, 803 F3d 209, 217 (II) (B) (5th Cir. 2015) (holding that Facebook and text messages were sufficiently authenticated by circumstantial evidence by way of testimony from a witness that "[defendant] could send text messages from his cell phone, she had spoken to [defendant] on the phone number that was the source of the texts, and the content of the text messages indicated they were from [defendant]" and nothing that "[a]lthough [withess] was not certain that [defendant] authored the messages, conclusive proof of authenticity is not required for the admission of

13

3. Finally, on the issue of sufficiency of the evidence, A. A. argues about evidence the State did *not* present, such as testimony to identify whether the toothbrush belonged to her guardian's son (who was the named victim), or whether gonorrhea would be transmissible by a person who has received treatment. We find these arguments unavailing.

When an appellate court reviews the sufficiency of the evidence, the relevant question is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[26] And here, on the issue of the victim's identity, A. A. asserts the State failed to prove the crime was committed as alleged because the son of A. A.'s guardian was identified as the victim in the petition for delinquency,

disputed evidence"); *United States v. Siddiqui*, 235 F3d 1318, 1322 (II) (A) (11th Cir. 2000) (holding email was sufficiently authenticated by circumstantial evidence, including its content showing familiarity with the relevant conduct and investigation). *See generally* Juan A. Albino, *Do Defendants Have A Privacy Interest in Their Cell Phone's Text Messages and E-Mails?*, 44 Rev. Jur. U.I.P.R. 383, 396-97 (VI) (B) (2010) (describing several ways in which email and text messages may be authenticated under the Federal Rules of Evidence, including by direct and circumstantial evidence, and noting that "contents of the e-mails or text messages may help show authentication by revealing details known only to the sender and the person receiving the text message").

[26] *Propes v. State*, 346 Ga. App. 116, 117 (1) (815 SE2d 571) (2018).

but no evidence or testimony directly linked the toothbrush at issue with him. But viewing the evidence in the light most favorable to the juvenile court as the trier of fact, there was evidence A. A. inserted more than one toothbrush into her vagina and that both toothbrushes belonged to the children. Indeed, A. A. said in her text message to a friend that she washed "them" off afterwards. There was, then, sufficient evidence by which the court could conclude that more than one child's toothbrush was involved, thus including the brush belonging to the guardian's son. In the alternative, the court could have found that both children used the same toothbrush given that the investigator referred to it as "the children's toothbrush" when questioning A. A.

As to the complaint regarding a lack of medical evidence to demonstrate whether gonorrhea is transmissible under these circumstances, there was testimony that gonorrhea is a sexually transmitted disease for which A. A. had recently been treated and that she placed an object used orally by others—*i.e.*, a toothbrush or toothbrushes—into her vagina. As a result, the trial court was presented with sufficient evidence to conclude that A. A. "consciously disregard[ed] a substantial and unjustifiable risk that [her] act . . . [would] cause harm or endanger the safety of

the other person" and that her "disregard constitute[d] a gross deviation from the standard of care which a reasonable person would exercise in the situation."[27]

For all these reasons, we affirm A. A.'s adjudication of delinquency.

*Judgment affirmed. Miller, P. J., and Mercier, J., concur.*

---

[27] *See* OCGA § § 16-5-60 (b); *In the Interest of M. L.*, 316 Ga. App. at 414-15 (holding that evidence was sufficient to sustain delinquency adjudication when the evidence showed that juvenile, "without supervision, started a fire using twigs, leaves, grass and mulch in close proximity to the townhome where his younger siblings were located," and the "fire was approximately eight inches high before [the juvenile] was discovered and instructed to put out the fire"); *Baker v. State*, 280 Ga. 822, 823 (1) (633 SE2d 541) (2006) (upholding conviction for reckless conduct when "[t]he jury concluded that appellant's act of leaving his young sons unsupervised on the upper floor of a two-story home near an unprotected downward flight of stairs was a gross deviation from the standard of care which a reasonable person would exercise and constituted a conscious disregard of the substantial and unjustifiable risk that his act endangered the children's bodily safety"); *see also Scroggins v. State*, 198 Ga. App. 29, 33 (1) (A) (401 SE2d 13) (1990) (affirming conviction for aggravated assault with intent to murder and affray, despite expert testimony showing no documented cases of HIV being transmitted through saliva and that there was at best only a "theoretical possibility" HIV could be transmitted via saliva, when HIV-infected appellant bit an officer), *overruled on other grounds by Dunagan v. State*, 269 Ga. 590, 593 (2) (a) n.3 (502 SE2d 726) (1998), *as recognized in Gordon v. State*, 252 Ga. App. 133, 134 (1) (555 SE2d 793) (2001).